UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

────────────────────────────

SEDNEY DELANO,

                         Plaintiff,

           v.                                    9:13-CV-00070
                                                 (NAM/TWD)

R. RENDLE, et al,

                    Defendants.

────────────────────────────

APPEARANCES:                          OF COUNSEL:

SEDNEY DELANO
96-A-2760
Plaintiff, pro se
Gowanda Correctional Facility
P.O. Box 311
Gowanda, NY 14070

LEMIRE, JOHNSON LAW FIRM              GREGG T. JOHNSON, ESQ.
Attorney for Defendant Collyer        MARY ELIZABETH KISSANE, ESQ.
2534 Route 9 - P.O. Box 2485
Malta, NY 12020

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

        Plaintiff, Sedney Delano, an inmate presently confined in Gowanda Correctional Facility,

has commenced this *pro se* action civil rights action under 42 U.S.C. § 1983.   Plaintiff's claim

against Defendant Douglas B. Collyer, an Assistant Clinton County District Attorney ("ADA

Collyer" or "Collyer"), is that he illegally obtained a copy of Plaintiff's medical records from

Defendant B. Lecuyer ("Lecuyer"), Nurse Administrator at Clinton Correctional Facility in

violation of 42 C.F.R. Part 2.[1]  (Dkt. No. 6 at ¶¶ 14, 17, 58.)  Construing Plaintiff's Amended

Complaint (Dkt. No. 6) with "the utmost liberality in light of his pro se status," the Hon. Norman

A. Mordue, S.D.J., identified Plaintiff's claim that Lecuyer had disclosed his medical records to

defendant ADA Collyer without his consent as one for violation of his Fourteenth Amendment

right to privacy, and determined that the claim survived initial review and required a response

from Lecuyer and ADA Collyer.[2]  (Dkt. Nos. 6 at ¶ 5; 13 at 15.)

ADA Collyer has moved to dismiss Plaintiff's Amended Complaint in its entirety

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 17) on the grounds

that: (1) 42 C.F.R. Part 2 does not provide a private right of action and was not violated by

Plaintiff in any event; (2) the Amended Complaint fails to state a claim against ADA Collyer

under § 1983; (3) Collyer is entitled to prosecutorial immunity; and (4) Collyer is entitled to

qualified immunity.[3]  (Dkt. No. 17-1.)  Plaintiff has opposed the motion (Dkt. No. 33), and

---

[1]  A claim for conspiracy under § 1983 against ADA Collyer and other Defendants named
in his Amended Complaint was dismissed without prejudice on initial review pursuant to 28
U.S.C. § 1915A.  (Dkt. No. 13 at 13-14, 17.)  Plaintiff moved for leave to file a second amended
complaint reasserting his conspiracy claim against certain of the Defendants, including Collyer.
(Dkt. No. 25.)  The Court denied Plaintiff's motion to amend.  (Dkt. No. 73.)  The basis for
denial of Plaintiff's request to reassert his conspiracy claims was the allegations of conspiracy in
Plaintiff's Second Amended Complaint were conclusory rendering his request to amend futile.
(Dkt. No. 73 at 16.)  Plaintiff thereafter filed another motion for leave to amend.  (Dkt. Nos. 85,
89.)  The motion was denied by the Court, in part because the proposed amendments were
identical to those set forth in his first motion to amend, which the Court had already denied.
(Dkt. No. 90 at 9.)

[2]  The District Court expressed no opinion as to whether Plaintiff's claim could withstand
a properly filed motion to dismiss or for summary judgment.  (Dkt. No. 13 at 15.)

[3]  Collyer initially sought dismissal on the grounds of improper service of process.  (Dkt.
No. 17-1 at 11-12.)  Collyer subsequently requested that he be allowed to withdraw that ground
for dismissal from his motion.  (Dkt. No. 53.)  The Court granted the request by Text Order dated
August 1, 2014.  (Dkt. No. 54.)

Collyer has filed reply papers. (Dkt. No. 37.) For the reasons that follow, the Court recommends that ADA Collyer's motion (Dkt. No. 17) be granted and the Amended Complaint be dismissed as against him with prejudice.

## II. LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged    but it has not shown    that the pleader is entitled to relief." *Id.* at 679  (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual

enhancement'" does not suffice. *Id.* (citation omitted)

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).

"The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the Plaintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41, 2008 U.S. Dist. LEXIS 110029, at *26-27 and n.41 (N.D.N.Y. Oct. 22, 2008)[4] (collecting cases). "Even where a document is not incorporated by reference [in the complaint], the court may nevertheless consider it [on a Rule 12(b)(6) motion without converting the motion to one for summary judgment] where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v.*

---

[4] The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 U.S. 76 (2d Cir. 2009) (per curiam).

*Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). The Court may also consider documents "possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." *ASTI Communications, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).[5]

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

## III. ANALYSIS

### A. Official Capacity Claim For Money Damages Against Collyer

Plaintiff has sued ADA Collyer in both his official and individual capacity and seeks money damages against Collyer under § 1983.[6] (Dkt. No. 6 at ¶¶ 18, 73.) The Court recommends the *sua sponte* dismissal of Plaintiff's claim for money damages against Collyer in

---

[5] The Court has concluded that it is appropriate to consider the documents submitted by Plaintiff in opposition to Collyer's motion without the need to convert the motion to one for summary judgment inasmuch as they are clearly possessed by and known to him and appear to have been relied upon by him in asserting his claim against Collyer. *See ASTI Communications*, 493 F.3d at 98.

[6] Plaintiff also claims money damages against Collyer under 42 U.S.C. §§ 1985, 1986, and 1988, which have no application to Plaintiff's claim regarding disclosure of his medical records. (Dkt. No. 1 at ¶ 73.) Sections 1985 and 1986 relate to conspiracies, and Plaintiff's conspiracy claim was dismissed on initial review. (Dkt. No. 13 at 13-14, 17.) 42 U.S.C. § 1988(b) is an attorney's fee provision.

his official capacity on Eleventh Amendment grounds.[7]  The Eleventh Amendment protects a

state against suits brought in federal court.  *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).  The

immunity granted the states under the Eleventh Amendment extends beyond the states

themselves to state agents and instrumentalities that are effectively arms of the state (*Woods v.

Rondout Valley Cent. School  Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)) and bars all

money damages claims against state officials acting in their official capacities, including Collyer.

*Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985); *see also Ying Jing Gan v. City of New York*,

996 F.2d 522, 536 (2d Cir. 1993) (stating that a district attorney in New York state is entitled to

Eleventh Amendment immunity when involved in prosecuting a criminal matter).

### B.  Claim for Violation of 42 C.F.R. Part 2

42 C.F.R. Part 2 is authorized under 42 U.S.C. §§ 290dd-2, formerly codified at 290ee-3,

and deals with confidentiality of records regarding drug and alcohol abuse by individuals that are

maintained in connection with prevention and treatment conducted, regulated or assisted, directly

or indirectly by any department or agency of the United States.[8]  42 C.F.R. Part 2.  ADA Collyer

seeks dismissal of Plaintiff's claim that he received medical records from Lecuyer in violation of

the regulations at 42 C.F.R. Part 2, on the grounds that there is no private right of action under

the regulation and Plaintiff fails to state a cause of action.  (Dkt. Nos. 17-1 at 7-9; 37 at 5-7.)

---

[7]  Collyer did not seek dismissal of the official capacity claims for money damages asserted against him in his motion to dismiss.  However, the District Court is empowered to dismiss the claims *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii).  *See Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179 (FJS/DRH), at *7, 2011 U.S. Dist. LEXIS 86831, at *19 (N.D.N.Y. July 13, 2011).

[8]  The Court construes Plaintiff's claim under 42 C.F.R. Part 2 as a claim under 42 U.S.C. § 290dd-2, the statute under which the regulations are promulgated.

Three circuit courts deciding the issue have held that there is no private right of action under 42 U.S.C. §§ 290dd-2. *See Doe v. Broderick*, 225 F.3d 440, 447-48 (4th Cir. 2000) ( no private right of action under § 290dd-2); *Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999) (same); *Ellison v. Cocke County, Tenn.*, 63 F.3d 467, 471 (6th Cir. 1995) ("we conclude that Section 290dd-2 creates no implied private right of action for damages."); *see also Flood v. Maine Dept. of Corrections*, No. 1:11-cv-270-DBH, 2012 WL 5389533, at * 12, 2012 U.S. Dist. LEXIS 158649, at * 38-39 (D. Me. Aug. 24, 2012) (dismissing claim under 42 C.F.R. Part 2 on a 12(b)(6) motion based upon a determination that § 290dd-2 creates no private right of action); *Jefferson v. Ferrer, Poirot and Wansbrough*, No. 3:10 0754 (KHS/JSB), 2011 WL 3025894, at * 4 n.6, 2011 U.S. Dist. LEXIS 81728, at * 12 n.4 (M.D. Tenn. July 25, 2011) (determining a claim under 42 C.F.R. Part 2 to be one under 42 U.S.C. § 290dd-2 and concluding that the claim could not be sustained because § 290dd-2 does not create a private cause of action). This Court finds the analysis of the circuit courts deciding the issue to be persuasive and concludes that Plaintiff has no private right of action under 42 C.F.R. Part 2.

Determining whether a statutory violation of § 290dd-2 may be enforced through § 1983 "is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute." *Broderick*, 225 F.3d at 448 (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 n.9 (1990) (internal quotation marks omitted). In *Broderick*, the Fourth Circuit noted that the claims nonetheless overlap because in both cases the court is required to determine "whether Congress has created a right that can be enforced." (citing *Blessing v. Freestone*, 520 U.S. 329, 341 (1977)) (a section 1983 plaintiff must "demonstrate [ ] that a federal statute creates an individual right"). Based upon the requisite inquiry, the Court held in

*Broderick* that "section 290dd-2 does not create 'enforceable rights, privileges, or immunities within the meaning of § 1983." *Id.* (citation and internal quotation marks omitted). *See also Ellison*, 63 F.3d at 472 ("Congress did not unambiguously confer upon the patient-beneficiaries the right to enforce [§ 290dd-2's] confidentiality provision through a Section 1983 claim.") Again the Court finds the circuit courts' analysis persuasive and concludes that Plaintiff has no right to enforce § 290dd-2 or 42 C.F.R. Part 2 through a § 1983 claim.

Inasmuch as there is no private right of action under § 290dd-2, and Plaintiff has no right to enforce the statute or regulations established thereunder through a § 1983 claim, the Court recommends that Plaintiff's claim against ADA Collyer for violation of 42 C.F.R. Part 2, authorized under § 290dd-2, be dismissed with prejudice.

**C.    Claim for Violation of Plaintiff's Fourteenth Amendment Right to Medical Privacy**

The Supreme Court has recognized a constitutional privacy right under the Fourteenth Amendment protecting "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). The Second Circuit has held that the right to privacy encompasses a right to confidentiality regarding "information about the state of one's health." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) ("there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over."). Whether or not a medical condition is sufficiently serious for the constitutional right to attach is decided on a case-by-case basis. *See Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 66 (2d Cir. 2011) (medical condition both serious in nature and of a type that is "excruciatingly private and intimate in nature such as those

likely to provoke . . . an intense desire to preserve one's medical confidentiality merits constitutional protection.").

In his Amended Complaint, Plaintiff has not specified the nature of the medical condition(s) disclosed in the records that ADA Collyer received from Lecuyer. (Dkt. No. 6.) But for the July 13, 2011, letter from ADA Collyer to the Hon. Kevin K. Ryan regarding a criminal proceeding against Plaintiff, which Plaintiff has submitted in opposition to Collyer's motion to dismiss, the Court might reasonably infer, given Plaintiff's claim under 42 C.F.R. Part 2, that the records involved information regarding alcohol or drug abuse by Plaintiff, despite the absence of specific factual allegations to that effect. (Dkt. No. 33 at 7.) However, the July 13, 2011, letter states:

> As a result of your issuing [a judicial subpoena *duces tecum*] on July 12, 2011, the District Attorney's Office was able to review additional documents including, but not limited to: DOCS Ambulatory Health Record Progress Notes, Inmate Injury Reports, and CVPH [medical center] medical records for the Defendant, Sedney Delano.
>
> From a review of said documents, it appears that Defendant suffered facial trauma and a perforated left eardrum on or about January 21, 2010 (the date of the instant criminal offense) and was referred to CVPH on or about January 23, 2011 where an official diagnosis was made.

*Id.*

Records of injuries received by Plaintiff, allegedly as the result of excessive force by Defendants Corrections Officer C. Strong and Corrections Sergeant R. Rendle on January 21, 2010 (Dkt. No. 6 at ¶¶ 41-47), the only specific medical information identified by Plaintiff, do not appear to be of the type that would be found to be "excruciatingly private and intimate in

nature" as required to state a § 1983 claim for violation of his Fourteenth Amendment right to privacy. *Matson*, 631 F.3d at 66.

Given the absence of factual allegations making a plausible showing that Collyer was given and thereafter disclosed medical information on Plaintiff that could be found to be "excruciatingly private and intimate in nature," *id*., and the July 13, 2011, letter suggesting otherwise, the Court finds that Plaintiff has failed to state a claim for violation of his Fourteenth Amendment right to medical privacy and recommends dismissal of the claim.[9]

### D. Prosecutorial Immunity

ADA Collyer seeks dismissal of Plaintiff's Amended Complaint on the grounds that he is entitled to absolute immunity. (Dkt. No. 17-1 at 9.) "Because a public prosecutor cannot zealously perform the prosecutorial duties of the office if compelled to work under the constant threat of legal reprisals, such official is shielded from liability for civil wrongs by the doctrine of absolute immunity." *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995). The Second Circuit explained in *Hill*, *id*. at 660-61 that:

> In determining whether absolute immunity obtains, we apply a "functional approach," looking at the function being performed rather than to the office or identity of the defendant. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993). State prosecutors are entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process." *Imbler* [*v. Pachtman*, 424 U.S. 409, 430 (1976)]. Thus, a district attorney is absolutely immune from civil liability for initiating a prosecution

---

[9] The Court would ordinarily recommend that because of his *pro se* status, Plaintiff be granted leave to amend his Fourteenth Amendment violation of medical privacy claim against ADA Collyer. *See Cuoco*, 222 F.3d at 112. However, because, as discussed below, the Court is recommending dismissal of Plaintiff's Amended Complaint with prejudice as against Collyer on absolute immunity grounds, amendment would be futile and should only be allowed in the event the District Court declines to adopt this Court's recommendation regarding absolute immunity.

and presenting the case at trial. *Id.* at 430-31; *Buckley*, 509 U.S. at 273. Such official is also immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, *Buckley*, 509 U.S. at 273, or determining which offenses are to be charged. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

By contrast, prosecutors have been found to have only qualified immunity when performing "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Plaintiff has argued in opposition to ADA Collyer's motion that Collyer was engaged in an investigatory function in obtaining his medical records and is, therefore, not entitled to absolute immunity. (Dkt. No. 33 at 3-4.) Plaintiff has submitted certain documents relied upon in support of his investigatory function argument in his opposition papers. *Id.* at 7-12. A December 15, 2010, Order from Judge Ryan directed that Plaintiff be brought before him for arraignment on criminal indictment 111-I-09419 on December 21, 2010. (Dkt. No. 33 at 9.) ADA Collyer's July 13, 2011, to Judge Ryan indicates that Collyer received Plaintiff's medical records pursuant to a subpoena *duces tecum* issued by Judge Ryan on July 12, 2011, on indictment 111-I-09419, and that the trial on that indictment was scheduled to begin on July 14, 2011. (Dkt. No. 33 at 7.)

Plaintiff's documents clearly establish that ADA Collyer's request for, and receipt of,

Plaintiff's medical records was a part of his trial preparation and thus clearly associated with the judicial phase of the criminal process regarding the indictment against Plaintiff, and not as an investigatory function.[10]

Therefore, the Court concludes that ADA Collyer is entitled to absolute immunity with regard to Plaintiff's claims against him and recommends that Plaintiff's action be dismissed as against Collyer. Because prosecutorial immunity is substantive and is not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice. *Cuoco*, 222 F.3d at 112; *see also Gssime v. Kawanta.*, No. 12-CV-2533 (JS)(ETB), 2012 WL 3241431, at *3, 2012 U.S. Dist. LEXIS 110936, at *9-10 (E.D.N.Y. Aug. 2, 2012) (claim against district attorney dismissed with prejudice where plaintiff alleged no conduct by the defendant that fell outside the scope of prosecutorial immunity).

**E.    Qualified Immunity**

Collyer contends that if the Court were to find that his actions violated Plaintiff's rights, he would nonetheless be entitled to qualified immunity. (Dkt. No. 17-1 at 9-10.) Inasmuch as the Court is recommending that his motion to dismiss be granted on other grounds, it finds it unnecessary to reach his qualified immunity argument.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendant ADA Collyer's Rule 12(b)(6) motion to dismiss

---

[10]  Investigatory functions have been found to include such things as involvement by a prosecutor in "[i]nvestigation, arrest, and detention [that] have historically and by precedent been regarded as the work of police, not prosecutors . . . ." *Bernard v. County of Suffolk*, 356 F.3d 495, 495, 502 (2d Cir. 2004).

12

Plaintiff's Amend Complaint (Dkt. No. 17) be **GRANTED WITH PREJUDICE**;[11] and it is hereby

      **ORDERED** that the Clerk's Office provide Plaintiff with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: February 3, 2015
       Syracuse, New York

                                  Thérèse Wiley Dancks
                                  United States Magistrate Judge

---

[11] As noted above, Plaintiff's conspiracy claim against Collyer was dismissed without prejudice on initial review under 28 U.S.C. § 1915A (Dkt. No. 13), and Plaintiff's subsequent motions for leave to amend to, *inter alia*, reassert conspiracy claims have been denied by this Court. (Dkt. Nos. 25, 83, 73, 90.) Inasmuch as Plaintiff's conspiracy claim was dismissed without prejudice, the Court's recommendation that Collyer's Rule 12(b)(6) motion to dismiss Plaintiff's Amended Complaint against him be granted with prejudice is intended to apply only to those claims remaining against Collyer following initial review.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**



Only the Westlaw citation is currently available.

United States District Court,
D. Maine.
Andrew P. FLOOD, Plaintiff
v.
MAINE DEPARTMENT OF CORRECTIONS, et al.,
Defendants.

No. 1:11–cv–270–DBH.
Aug. 24, 2012.

Andrew P. Flood, Machiasport, ME, pro se.

James E. Fortin, Office of the Attorney General, Augusta, ME, Bernard J. Kubetz, Eaton Peabody, Bangor, ME, Evan J. Roth, U.S. Attorney's Office, Rebecca H. Farnum, Thompson & Bowie, LLP, Portland, ME, for Defendants.

*MEMORANDUM DECISION ON MOTION TO SUBSTITUTE AND MOTIONS TO AMEND AND RECOMMENDED DECISION ON MOTIONS TO DISMISS*

JOHN H. RICH III, United States Magistrate Judge.

**\*1** The plaintiff, a prisoner who is proceeding *pro se,* filed the instant action on July 8, 2011. *See* ECF No. 1. On September 19, 2011, he notified the court that he intended to amend his complaint before service was made. *See* ECF No. 5. By order dated September 23, 2011, I directed that he file his amended complaint no later than October 14, 2011, "given the complexion of Flood's repetitive litigation in this court," and that the amended complaint "include a clear identification of all of the defendants, the legal basis for his federal claims against each defendant, and the nature of the relief that he seeks as to each defendant[,]" enabling

the court to screen it pursuant to 28 U.S.C. § 1915(e). *See* ECF No. 6 at 4.[FN1] On October 19, 2011, the plaintiff filed an amended complaint that is the operative complaint in this case. *See* Amended Complaint (ECF No. 11). On October 26, 2011, after a preliminary screening pursuant to 28 U.S.C. § 1915(e), the court ordered that the Amended Complaint be served on the defendants. *See* ECF Nos. 13–14; *see also, e.g., Street v. Fair,* 918 F.2d 269, 271 (1st Cir.1990) ("Section 1915(d) [now codified at 28 U.S.C. § 1915(e) ], applicable only to *in forma pauperis* actions, was designed to screen out baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions under Fed.R.Civ.P. 11.") (citation and internal quotation marks omitted).[FN2]

Fourteen motions now are pending, all of which have been referred to me:

1. Three motions to dismiss the operative Amended Complaint, *see* Motion To Dismiss ("State Motion To Dismiss") (ECF No. 26) at 1; Defendant Ann Elizabeth O'Brien's Motion To Dismiss ("O'Brien Motion To Dismiss") (ECF No. 41) at 1; Eastport Motion To Dismiss at 1, and related motions by the Eastport Defendants to substitute the United States as a party with respect to any medical malpractice tort claims, *see* Motion To Substitute (ECF No. 82), and by the plaintiff for discovery related to the Motion To Substitute, *see* Plaintiff's Request for Judicial Review of the Attorney General's Certification on Scope of Employment (ECF No. 87);

2. Two motions by the plaintiff to amend his complaint, *see* Letter dated January 9, 2012, from Andrew Flood to the court styled as a Motion To Amend Complaint ("First Motion To Amend") (ECF No. 36); Plaintiff's Motion for Leave To Amend the Complaint Pursuant to Federal Civil Procedure

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

15(a)(2) ("Second Motion To Amend") (ECF No. 39);

3. A motion by the plaintiff for a preliminary injunction, *see* Letter dated December 26, 2011, from Andrew P. Flood to the court, styled as a Motion for a Preliminary Injunction ("P/I Motion") (ECF No. 32), and a related objection by the State Defendants to materials tardily filed without leave of court in support of the P/I Motion, *see* Objection to Memorandum in Support of Injunctive Relief and Attached Exhibits ("P/I Objection") (ECF No. 74);

**\*2** 4. An additional motion by the plaintiff for discovery, *see* Plaintiff's Request for Discovery in Order To Identify Jane and John Doe Defendants (ECF No. 89); and

5. Four motions by the plaintiff to seal various documents, *see* ECF Nos. 102, 114, 115, 121.

For the reasons that follow, I deny the Eastport Defendants' motion to substitute, mooting the plaintiff's request for discovery bearing on that motion, recommend that the court grant the defendants' motions to dismiss the operative complaint, and deny the plaintiff's motions to amend that complaint. If Judge Hornby adopts my recommendation to grant the motions to dismiss, the plaintiff's P/I motion, the State Defendants' objection to materials filed in support of that motion, and the plaintiff's motion for discovery with respect to John and Jane Doe will be rendered moot. *See Thomas v. Guffey,* 367 Fed. Appx. 957, 960 (10th Cir.2010) ("The dismissal of the underlying claim render [s] moot the requests for injunctive relief regarding that claim[.]"). Hence, I have not considered those motions. I will separately rule on the plaintiff's pending motions to seal various filings.

**I. Motions To Dismiss**
**A. Applicable Legal Standard**
The Supreme Court has stated:

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román–Oliveras v. Puerto Rico Elec. Power Auth.,* 655 F.3d 43, 45 (1st Cir.2011). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

**B. Factual Background**
**\*3** The operative complaint includes the following relevant factual allegations.[FN3]

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

### 1. The NMOC

At all material times, the plaintiff was under the supervision of the MDOC and receiving substance abuse and mental health treatment and counseling from Eastport. Amended Complaint ¶ II(A). The MDOC terminated the plaintiff's probation because he was receiving substance abuse replacement therapy at Arnold Memorial Medical Center and the Discovery House that it disagreed was therapeutic. *Id.* ¶ IV(B). The MDOC did not allow the plaintiff to receive certain medications and limited the providers from whom he could receive care, causing him to sign an exclusive contract with Eastport. *Id.* ¶ IV(C).

The MDOC moved the state to prosecute the plaintiff based on confidential substance abuse and psychiatric information. *Id.* ¶ IV(F). The MDOC disclosed confidential medical, psychiatric, and substance abuse treatment information on its website and in C.O.R.U.S. for any MDOC employee to view. *Id.* ¶ IV(G). FN4 The staff used this information to label the plaintiff "crazy" and "delusional." *Id.* ¶ IV(I). The MDOC used confidential substance abuse treatment information during a classification hearing at the Maine State Prison to decide what programs were available to the plaintiff. *Id.* ¶ IV(H). Because the MDOC security staff has labeled the plaintiff a "med seeker," he has been excluded from medical and mental health treatment and care. *Id.* ¶ IV(J).

### 2. Probation Officer William Love

Probation Officer William Love interrupted several substance abuse treatment programs in which the plaintiff was participating. *Id.* ¶ VI(B). He interfered with a treatment program that the plaintiff was undergoing at Wellsprings in Bangor, Maine. *Id.* ¶ VI(C). He did so to force the plaintiff to move back to Calais, Maine, where Love could obtain more control over him. *Id.* Love felt that the plaintiff would be "unjustly rewarded" if he were allowed to complete probation under Bangor Probation and Parole Officer Candice Keefer in Bangor, Maine. *Id.* ¶¶ VI(C), (I).

Love developed an animus toward the plaintiff as the result of Flood's sister's default on a personal loan obtained from Love's wife, Mona, and a personal relationship Love had with the plaintiff's fiancée. *Id.* ¶ VI(D). Love felt that the plaintiff should "take responsibility" for his sister. *Id.* Love also retaliated against the plaintiff for disagreeing with Love's views on Alcoholics Anonymous ("AA"). *Id.* ¶ VI(E). The plaintiff had informed Love that he suffered from social phobia, making it almost impossible for him to interact in a group setting, and that the views on different religions went against his personal belief in God. *Id.* Love nonetheless directed the plaintiff to attend the group several times a week, telling him that his social phobia was "all in [his] head" and was no excuse. *Id* . Love did not recuse himself from the plaintiff's supervision after conflicts of interest surfaced between himself and the plaintiff. *Id.* ¶ VI(V).

**\*4** Love released confidential substance abuse treatment information to the public and the courts without the plaintiff's consent. *Id.* ¶¶ VI(F)-(G). Love entered clinical notes of one-on-one sessions into a public hearing without consent. *Id.* ¶ VI(G). Love entered the plaintiff's medical, psychiatric, and substance abuse treatment information into an affidavit that he sent to the courts. *Id.* ¶ VI(X). Love also entered false information into the C.O.R.U.S. in the MDOC website, including statements pertaining to the plaintiff's substance abuse programs and psychiatric therapy groups, such as a false statement that the plaintiff had failed to attend and gotten "kick [ed]out" of groups in which he was successfully engaged at that time. *Id.* ¶ VI(Y).

Love redisclosed treatment information from the Wellsprings program in Bangor to Eastport in an attempt to discredit the plaintiff. *Id.* ¶ VI(P). Love falsely told Tari Murphy and Ann O'Brien that James Bradney had kicked him out of a "DSAT" program in Bangor. *Id.*FN5 Love released court documents, including probation conditions, to Eastport. *Id.* ¶ VI(Q). Love used his influence over Eastport to interfere with

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

the treatment that the plaintiff was receiving there and to gain access to information. *Id.* ¶ VI(W). He influenced Eastport to make the plaintiff submit to weekly blood draws at Calais Hospital. *Id*. He told O'Brien, of Eastport, that the plaintiff was manipulating his urinalysis tests although the plaintiff had never failed such a test. *Id.*

Love used outdated release forms to gain access to documents and information, including the plaintiff's DSAT file at Eastport, that the plaintiff did not give him permission to access. *Id.* ¶ VI(R).

Love called people for whom the plaintiff worked and released privileged information, informing individuals for whom the plaintiff subcontracted that he was taking suboxone, which was part of his substance abuse therapy at Arnold Memorial Medical Center. *Id.* ¶ VI(H). Love has falsely informed people in the community in which the plaintiff grew up that Love sent him back to prison for not providing for his family and neglecting his parental duties. *Id.* ¶ VI(S).

During a time that the plaintiff was under Keefer's supervision and not Love's, Love placed a complaint to the Maine Department of Health and Human Services regarding the plaintiff's receipt of benefits. *Id.* ¶ VI(I).

Love interfered with the plaintiff's relationship with his fiancée, who is the mother of his child, threatening the plaintiff with retaliation for engaging in the relationship because, in Love's view, the plaintiff's fiancée was too good for hi m, and the plaintiff was going to sabotage her sobriety because of the medications that he was being prescribed. *Id.* ¶ VI(J).

Love refused to allow the plaintiff to receive treatment for mental health disorders that Love did not believe existed. *Id.* ¶ VI(K). He told the plaintiff that, because he was a substance abuse addict, he was not to take any medications for his mental health disorders.

*Id.* He sought to have the state prosecute the plaintiff for undergoing treatment with which he disagreed. *Id.* Other individuals on probation who were undergoing the same substance abuse therapy were not treated in this manner. *Id.* ¶ VI(U).

**\*5** On several occasions, Love sent the Calais Police Department to homes where the plaintiff was installing floor covering, disrupting the plaintiff's ability to work in the small community in which he lived. *Id.* ¶ VI(L). Love threatened the plaintiff with retaliation if he ever brought up the inappropriate things that Love was doing or lodged any complaints against him. *Id.* ¶ VI(M). He told the plaintiff that he would be punished if he brought up the relationship that Love and his wife had with the plaintiff's fiancée and would be sent to prison if he mentioned the loan payment on which the plaintiff's sister had defaulted. *Id.*

After the plaintiff told the court on February 9, 2009, that Love had been acting in a professionally unreasonable manner by interfering with substance abuse treatment, Love told the plaintiff that he had warned him not to bring that up in court and punished him with extra weekly check-ins, counseling, and AA, and humiliated him at office check-ins. *Id.* ¶ VI(N). The plaintiff was afraid ever to mention the conflict in court again. *Id.* After the plaintiff was arrested and sent to Washington County Jail, Love warned him twice not to bring up any of the conflicts of interest, or he would be punished after he went to prison. *Id.* ¶ VI(O).

### 3. Probation Supervisor Charles O'Roak

Charles O'Roak, Love's supervising officer, was made aware of misconduct by Love and failed to act. *Id.* ¶ V(A). Love had been removed as Flood's sister's probation officer as a result of a personal conflict of interest. *Id.* O'Roak was made aware of the conflict of interest between the plaintiff and Love in the summer of 2008. *Id.* ¶ V(B). When the plaintiff was under the supervision of Candice Keefer of the Bangor Office of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

Probation and Parole, the plaintiff informed her of Love's inappropriate interference with his substance abuse therapy and his fear that Love would send him back to prison based on a personal conflict. *Id.* Keefer referred the plaintiff to O'Roak, who told him that there was nothing he could do because Love had the authority to act according to his own beliefs. *Id.* ¶ V(C).

### 4. Eastport

During intake, the plaintiff informed Eastport that he suffered from bipolar mood disorder and a form of post-traumatic stress disorder, social phobia. *Id.* ¶ VII(C). The plaintiff later was dismissed for an inconsistency in mood and behavior. *Id.* Eastport broke its contract with the plaintiff by allowing Love to interfere with his treatment. *Id.* ¶ VII(D). Eastport released the plaintiff's entire DSAT file to the MDOC and the State of Maine, although Flood never signed any releases for that disclosure and did not have fair warning of that release. *Id.* ¶ VII(F). Eastport did not allow Flood one-on-one treatment, although Flood's disorders are triggered in group settings. *Id.* ¶ VII(G). Eastport disclosed to the MDOC, in order to have the plaintiff's probation revoked, that he had an "attitude" problem and an "inconsistency in mood." *Id.* ¶ VII(H). The court gave the plaintiff a five-year sentence. *Id.*

### 5. Tari Murphy of Eastport

**\*6** Murphy of Eastport disclosed confidential substance abuse treatment notes to the MDOC and the State of Maine without the plaintiff's permission. *Id.* ¶ VIII(B). On August 23, 2007, Murphy released confidential information to the MDOC in order to institute a violation report to probation. *Id.* The plaintiff was sentenced to five years in prison. *Id.* ¶ VIII(A).[FN6] Murphy also disclosed to the court, without the plaintiff's consent, that he was taking suboxone and xanax, which the plaintiff had informed Eastport he was receiving from Arnold Memorial Medical Center. *Id.* ¶ VIII(C). She also expressed to the court her opinion of the plaintiff's attitude during group sessions and informed the judge that the plaintiff was a bully and not

qualified for substance abuse or psychiatric therapy. *Id.* ¶ VIII(D). Murphy falsely told the court that the plaintiff was not involved in any other groups upon his discharge, although he was still attending Arnold Memorial Medical Center, AA, and a Healthways one-on-one group with Sandra Hayward. *Id.* ¶ VIII(J). Murphy was aware of all of those other groups. *Id.* In response to the plaintiff's statements that he did not believe in group settings and group-oriented religion-based treatment programs, Murphy told the plaintiff that he had a bad attitude toward AA. *Id.* ¶ VIII(I).

Upon the plaintiff's entry into the Eastport program, he refused to sign release forms for the MDOC to view his treatment at Eastport. *Id.* ¶ VIII(E). Murphy admitted, in response to a complaint filed against her by the plaintiff, that the plaintiff specifically forbid redisclosure of information to the MDOC, but that she sent it to Love because Love told her it would be a violation of the plaintiff's probation. *Id.* ¶ VIII(F).

### 6. Ann O'Brien of Eastport

The plaintiff sought treatment from O'Brien, of Eastport, for a debilitating anxiety disorder. *Id.* ¶¶ IX(B)-(C). Love told O'Brien that the plaintiff was somehow manipulating his urinalysis tests and that Love needed her to prove it. *Id.* ¶ IX(C). O'Brien forced the plaintiff to undergo weekly blood draws to see if he was substituting his medications. *Id.* ¶ IX(B).

O'Brien allowed Love to dictate what medications were available to the plaintiff. *Id.* ¶ IX(D). She called Love before prescribing medications to see if he approved. *Id.* Love is not a medical doctor or educated in medicine. *Id.* O'Brien stated that she did this because Probation and Parole had to be in agreement as to what medication was available to the plaintiff. *Id.*

After the plaintiff discontinued his treatment with O'Brien and Eastport, his entire clinical notes were released to the MDOC without his consent. *Id.* ¶

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
(Cite as: 2012 WL 5389533 (D.Me.))

IX(E). He was not told that his in-session clinical records were going to be submitted to public discovery. *Id.*

#### 7. Karen Barbee of Eastport

Barbee, of Eastport, stated that she disagreed with the substance abuse treatment (methadone) that the plaintiff was receiving from the Discovery House, which, mixed with his prescribed psychiatric medications, "was potentially life threatening." *Id.* ¶ X(A). This information was sent to the courts. *Id.* Barbee made the plaintiff believe that any disclosures that he signed were to be used in-house only but later released information disclosed while "in session" to the MDOC and the State of Maine, including information to be used against the plaintiff to revoke his probation and send him back to prison for five years. *Id.* ¶¶ X(B), (D). Barbee told the court that the plaintiff's irregularity in mood was concerning, despite the fact that he had been prescribed medications under the strict supervision of a medical doctor. *Id.* ¶ X(C).

#### C. Discussion
#### 1. State Defendants' Motion

**\*7** In the Amended Complaint, the plaintiff identifies (i) the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983 as his grounds for suit against the MDOC, *see id.* ¶ XIII, (ii) 42 U.S.C. § 1986 as his ground for suit against O'Roak, *see id.* ¶ XIV, and (iii) 42 U.S.C. § 1983, 5 M.R.S.A. § 4682, the Maine Tort Claims Act, the ADA, and the Rehabilitation Act as his grounds for suit against Love, *see id.* ¶ XV. He also alleges, in passing in the body of his complaint, that Love violated federal confidentiality laws, specifically, 42 C.F.R. Part 2. *See id.* ¶ VI(F).FN7 The plaintiff seeks (i) preliminary and permanent injunctions against the rediscloture by Love and the MDOC of information pertaining to his substance abuse and psychiatric treatment, (ii) compensatory and punitive damages against each defendant, including compensation for business that the plaintiff allegedly lost, and (iii) costs of suit. *See id.* at 15. To the extent that the plaintiff

sues Love and O'Roak in their official capacities, he effectively sues the MDOC. *See, e.g., Ruffin v. Brann, No. CV–09–87–B–W, 2009 WL 3747189, at \*3 (D.Me. Nov. 5, 2009).* ("A lawsuit against a state official in his or her 'official capacity' is not a suit against the official at all, but rather is a suit against the official's office."). My references to "the MDOC," hence, include Love and O'Roak in their official capacities.

The State Defendants seek dismissal of:

1. The section 1983 claims against them on the bases that, (i) in the absence of any allegation that the plaintiff's sentence for violating the conditions of probation has been vacated on appeal, state post-conviction review, executive order, or federal habeas corpus, he cannot maintain those claims pursuant to *Heck v. Humphrey,* 512 U.S. 477 (1994), (ii) any section 1983 claims against the MDOC are barred by sovereign immunity, (iii) any claim for emotional anguish, mental distress, or punitive damages resulting from the conditions of the plaintiff's confinement is barred by his failure to allege that he suffered a physical injury, as required to state a claim pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), and (iv) the facts alleged do not support injunctive relief against the MDOC or Love, *see* State Motion To Dismiss at 7–10;

2. Disability discrimination claims against them on the grounds that (i) the plaintiff fails to allege sufficient facts to make out a plausible claim that he has a disability or was discriminated against on the basis of a disability, and, (ii) in any event, Love and O'Roak are not subject to suit under Title II of the ADA, *see id.* at 11–13;

3. Any Public Health Service Act claim on the basis that the act creates no private right of action, *see* Reply to Opposition to Motion To Dismiss ("Dismiss Reply/State") (ECF No. 44) at 3; and

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

4. State-law claims on the basis that, if the federal claims are dismissed, the court should decline to exercise its supplemental jurisdiction over them and, alternatively, the Amended Complaint fails to state a claim under Maine law for defamation, violation of medical confidentiality statutes, or violation of the Maine Civil Rights Act, *see* State Motion To Dismiss at 14–17.

**\*8** I conclude, and recommend that the court find, that the Amended Complaint fails to set forth any plausible claim of entitlement to relief with respect to the plaintiff's federal causes of action pursuant to 42 U.S.C. §§ 1983 and 1986, the ADA, the Rehabilitation Act, and the confidentiality provisions of the Public Health Service Act. Should the court agree that none of the plaintiff's federal claims survives the State Defendants' motion to dismiss, I further recommend that it decline to exercise supplemental jurisdiction over any state-law claims.

**a. Section 1983 Claims**
In *Heck,* the Supreme Court held that:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the com-

plaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck,* 512 U.S. at 486–87 (footnote omitted) (emphasis in original). The reasoning of *Heck* has been extended to prisoners' claims for declaratory and injunctive relief as well as for money damages. *See, e.g., Stote v. Bennett,* No. Civ.A. 02–30108–MAP, 2002 WL 32166533, at \*4 (D.Mass. Sept. 10, 2003).

I agree with the State Defendants that, "[a]lthough it is not completely clear from the few facts alleged, the gravamen of Flood's complaint appears to be that he was wrongfully imprisoned upon the revocation of his probation caused by the improper actions of Officer Love, as condoned by Love's supervisor, Officer O'Roak, and the MDOC." State Motion To Dismiss at 7. A judgment in favor of the plaintiff with respect to the alleged wrongful conduct of Love, O'Roak, and the MDOC leading to the plaintiff's revocation of probation and re-incarceration necessarily would imply the invalidity of his sentence. *See, e.g., Paris v. Dallas Police Dep't.,* No. 3:12–CV–0296–G–BH, 2012 WL 2520779, at \*5 (N.D. Tex. June 5, 2012) (rec. dec., *aff'd* June 29, 2012) ("*Heck* applies to both parole and probation revocation. By claiming that the information contained in the arrest report is false, Plaintiff is challenging the validity of his parole revocation, which was based on this arrest.") (citations omitted); *Bolden v. Winchester,* Civil Action No. 07–756–SLR, 2008 WL 482471, at \*2 (D.Del. Feb. 19, 2008), *appeal dismissed,* 324 Fed. Appx. 146 (3d Cir.2009) (inmate's claims that he did not receive a fair probation revocation after being wrongly accused of being "dirty" despite completing a drug treatment program were barred by *Heck* ); *Hall v. City of Mount Pleasant,* Civil Action No. 5:06cv118, 2006 WL 3759908, at \* 2–\* 3 (E.D.Tex. Nov. 8, 2006) (inmate's disclaimer of any challenge to his probation revocation was unavailing when, although he "couched his claim as a Fourth Amendment issue, rather than an overt challenge to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

the validity of his parole revocation," a judgment in his favor "would necessarily imply that the revocation of his probation was unlawful, and so the rule in *Heck* applies").

**\*9** The plaintiff does not allege that his probation revocation sentence has been reversed, invalidated, or otherwise called into question. *See generally* Amended Complaint.[FN8] Therefore, his section 1983 and section 1986 claims predicated on conduct culminating in his sentencing and re-incarceration are not cognizable pursuant to *Heck*.[FN9]

To the extent that the plaintiff alleges improper conduct on the part of the MDOC beyond that calling into question his probation revocation, for example, that the MDOC disclosed confidential information on its website that MDOC staff have used to label him "crazy" and "delusional" and to decide, during a classification hearing at the Maine State Prison, which programs would be available to him, *see id.* ¶¶ IV(H)-(I), the MDOC is not, as a matter of law, amenable to suit pursuant to section 1983, whether for damages or declaratory or injunctive relief. *See, e.g., Poirier v. Massachusetts Dep't of Corr.,* 558 F.3d 92, 97 (1st Cir.2009) ("States and their agencies are entitled to sovereign immunity regardless of the relief sought. Poirier's argument that she only seeks prospective injunctive relief against the DOC is therefore unavailing.") (citation and internal quotation marks omitted).

The plaintiff's suit against O'Roak amounts to an allegation that O'Roak failed to correct misconduct of Love culminating in the plaintiff's probation revocation. *See* Amended Complaint ¶ V. His claims against O'Roak, accordingly, are barred by *Heck.*

In any event, the plaintiff fails to state a claim for supervisory liability against O'Roak. "As a general matter, liability for public officials under section 1983 arises only if a plaintiff can establish that his or her

constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." *Grajales v. Puerto Rico Ports Auth.,* 682 F.3d 40, 47 (1st Cir.2012) (citation and internal quotation marks omitted). The plaintiff alleges that when he made O'Roak aware, in the summer of 2008, that he and Love had a personal conflict of interest, O'Roak told the plaintiff that there was nothing that he could do. *See* Amended Complaint ¶ V. This allegation, even accepted as true, does not demonstrate that O'Roak condoned or acquiesced in conduct by Love amounting to a constitutional violation.

The plaintiff's claims against Love, as well, primarily involve conduct integral to the revocation of the plaintiff's probation, including allegedly interfering with mental health and substance abuse treatment, wrongly obtaining confidential treatment information, and disclosing confidential or false information to Eastport and the court. *See id.* ¶ VI. Any section 1983 claim predicated on such conduct is barred by *Heck.*

The Amended Complaint can be construed to allege certain conduct by Love other than that integral to, and culminating in, the plaintiff's probation revocation; notably, that, as a result of a personal vendetta, Love also disclosed confidential and/or false information to unnamed persons in the community and to the MDOC, which used it against the plaintiff subsequent to his re-incarceration, and that Love interfered with the plaintiff's relationship with his fiancée. *See id.* ¶¶ VI(H), (J), (S), (V), (Y). However, the plaintiff identifies no rights secured by the federal constitution or created by federal statute that were transgressed by this alleged misconduct. *See generally id.; see also, e.g., Mullenbach v. Gardner,* No. 4:10–CV–00418–EJL–M HW, 2012 WL 693040, at \*5 (D.Idaho Feb. 9, 2012) (rec. dec., *DIII* Mar. 1, 2012) ("To state a claim under 42 U.S.C. § 1983, a plaintiff must allege four elements: (1) a violation of rights protected by the Constitution, or created by federal statute (2) proximately caused (3) by conduct

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

of a 'person' (4) acting under color of state law.")
(citation and internal quotation marks omitted).[FN10]

**\*10** For these reasons, none of the plaintiff's section 1983 claims against the State Defendants survives their motion to dismiss.

### b. ADA, Rehabilitation Act Claims

The First Circuit has observed:

Congress enacted the ADA to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. Title I of the ADA prohibits discrimination in employment. Title III prohibits discrimination in access to public accommodations like hotels, restaurants, and theaters. Title II, the provision at issue here, prohibits discrimination against persons with disabilities by public entities and is modeled on § 504 of the Rehabilitation Act.... In applying Title II, therefore, we rely interchangeably on decisional law applying § 504.

*Parker v. Universidad de P.R.,* 225 F.3d 1, 4 (1st Cir.2000) (citations, footnotes, and internal quotation marks omitted).

The State Defendants reasonably construe the Amended Complaint as implicating Title II of the ADA insofar as it pertains to them. *See* State Motion To Dismiss at 11.[FN11] To prevail on a disability discrimination claim pursuant to Title II of the ADA, "a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Id.* at 5 (citation and internal quotation marks omitted).

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities" of an individual. 42 U.S.C. § 12102(1)(A). "A 'substantial limitation' is one that is permanent or long-term." *Faiola v. APCO Graphics, Inc.,* 629 F.3d 43, 47 (1st Cir.2010) (citation and internal quotation marks omitted). "Pursuant to the ADA regulations, a person must be unable to perform, or significantly restricted in the performance of, a major life activity that an average person in the general population can perform." *Id.* at 48.

As the State Defendants argue, to the extent that the plaintiff brings an ADA or Rehabilitation Act claim against Love in his individual capacity, it must be dismissed. This court, among others, has held that there is no individual liability under Title II of the ADA or section 504 of the Rehabilitation Act. *See DeCotiis v. Whittemore,* 842 F.Supp.2d 354, 363 n.5 (D.Me.2012).[FN12]

To the extent that the plaintiff sues the MDOC pursuant to the ADA and the Rehabilitation Act, he fails to state a plausible claim of entitlement to relief for at least two independent reasons. First, the Amended Complaint is devoid of any factual allegations regarding the manner in which the plaintiff's impairments substantially limit a major life activity. *See generally* Amended Complaint. Second, even taking all factual allegations as true, the plaintiff does not make out a plausible claim that he was denied programs or services on account of any disability.

**\*11** The plaintiff alleges, in relevant part, that the MDOC terminated his probation because he was receiving substance abuse replacement therapy with which it disagreed and that it has excluded him from medical and mental health treatment, presumably since his re-incarceration, because members of the MDOC security staff have labeled him a "med seeker." First Amended Complaint ¶¶ IV(B)-(C).

To the extent that these allegations are based on

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Love's alleged misconduct, the plaintiff attributes that misbehavior to personal animus based on conflicts of interest regarding Love's sister and fiancée, *see id.* ¶¶ VI(D), (M), (V), tending to undercut any claim of disability-based animus. The plaintiff also alleges that Love (i) disbelieved his claim that he had a social phobia, as a result of which Love directed him to participate in group treatment, *see id.* ¶ VI(E), (ii) refused to allow him to receive treatment for mental health disorders that Love did not believe existed, *see id.* ¶ VI(K), (iii) told him that, because he was a substance abuse addict, he was not to take any medications for his mental health disorders, *see id.,* and (iv) sought to have the state prosecute him for undergoing treatment with which he (Love) disagreed, *see id.* He asserts that other individuals on probation who were undergoing the same substance abuse therapy were not treated in that manner. *See id.* ¶ VI(U).

Yet, to the extent that the plaintiff alleges that MDOC or Love denied him access to preferred treatment or programs because they did not believe that he had an underlying disability warranting such treatment, that conduct did not amount to discrimination based on a real or perceived disability. To the contrary, the MDOC and Love allegedly denied such access because they did not believe that the plaintiff had the disability in question (for example, social phobia).

To the extent that the plaintiff alleges that the MDOC and Love denied him programs or services because they perceived him as a "med seeker" or a substance abuse addict, the Amended Complaint is devoid of factual allegations necessary to make out a claim on that basis pursuant to the ADA or the Rehabilitation Act in a prison/probation context.

"Drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA." *Kula v. Malani,* 539 F.Supp.2d 1263, 1268 (D.Haw.2008) (citation and internal quotation marks omitted). "The ADA protects qualified individuals who: (1) have successfully completed a supervised drug rehabilitation program and are no longer using illegal drugs; (2) are participating in a supervised drug rehabilitation program and are no longer using illegal drugs; and (3) are erroneously regarded as using drugs when they are not." *Id.* (citations omitted).

In *Thompson v. Davis,* 295 F.3d 890 (9th Cir.2002), the United States Court of Appeals for the Ninth Circuit held that a parole board may not categorically exclude a class of disabled people from parole based on disability any more than it may categorically exclude African–Americans from consideration for parole because of their race. *See Thompson,* 295 F.3d at 898. However, a parole board or prison administrators may take an individual's disability into account in determining his or her suitability for parole or conditions of jail confinement without running afoul of the ADA. *See, e.g., Kula,* 539 F.Supp.2d at 1269 ("Just as *Thompson* permits prison officials to consider an inmate's propensity to commit crime as a result of disability in denying parole, Defendants were free to consider Plaintiff's admitted irrational and unstable behavior in determining whether he was qualified to participate in a drug rehabilitation program [while in prison].").

**\*12** The well-pleaded factual allegations of the Amended Complaint indicate, in effect, that Love and the MDOC made individualized assessments of the appropriateness of various treatments for him, the continuation of his probation, and his classification upon re-incarceration, taking into account his history of substance abuse and/or an allegedly erroneous perception of ongoing substance abuse. *See, e.g.,* Amended Complaint ¶¶ VI(C), (J) & VI(K), (T), (U), (W). That does not amount to a transgression of the ADA or the Rehabilitation Act. *See, e.g., Thompson,* 295 F.3d at 898 n.4 ("The parole board claims to have and undeniably does have legitimate penological interests in considering the plaintiffs' substance abuse backgrounds during the individualized inquiry for

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

parole suitability. We hold only that plaintiffs may state a claim under Title II based on their allegations that the parole board failed to perform an individualized assessment of the threat they pose to the community by categorically excluding from consideration for parole all people with substance abuse histories."); *Kula,* 539 F.Supp.2d at 1269 ("The policy considerations underlying *Thompson's* application in the parole setting are equally relevant here. The court is mindful that prison administrators should be accorded wideranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security, and that the judiciary is ill equipped to deal with difficult issues of prison administration.") (citations and internal punctuation omitted).

For these reasons, the Amended Complaint fails to state a claim against the MDOC or Love of violation of the ADA or the Rehabilitation Act.

### c. Claim Pursuant to Public Health Service Act

The plaintiff also alleges, within the body of his Amended Complaint, that Love violated 42 C.F.R. Part 2, *see* Amended Complaint ¶ VI(F), which contains regulations authorized by the Public Health Service Act, 42 U.S.C. § 290dd–2, bearing on the disclosure of drug abuse patient records, *see* 42 U.S.C. § 290dd–2; 42 C.F.R. § 2.1. Nonetheless, as the State Defendants point out, *see* Dismiss Reply/State at 3, three United States Circuits Courts of Appeals have held that 42 U.S.C. § 290dd–2 creates no private right of action, *see Doe v. Broderick,* 225 F.3d 440, 447–49 (4th Cir.2000); *Chapa v. Adams,* 168 F.3d 1036, 1038 (7th Cir.1999); *Ellison v. Cocke County, Tenn.,* 63 F.3d 467, 471–72 (6th Cir.1995). In *Briand v. Lavigne,* 223 F.Supp.2d 241 (D.Me.2002), this court deemed those precedents persuasive and followed them, dismissing a similar claim pursuant to Rule 12(b)(6) on that basis. *See Briand,* 223 F.Supp.2d at 250–51. For that reason, in invoking 42 C.F.R. Part 2, the plaintiff fails to state a claim as to which relief can

be granted.

### d. State–Law Claims

The State Defendants argue that, if the court dismisses the plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over his state claims. *See* State Motion To Dismiss at 14. They argue, in the alternative, that Amended Complaint fails to state a claim with respect to the state-law causes of action. *See id.* at 15–17. I recommend that, if the court agrees that the federal claims in the Amended Complaint must be dismissed, it decline to exercise supplemental jurisdiction over the plaintiff's remaining state-law claims. *See Ramos–Echevarría v. Pichis, Inc.,* 659 F.3d 182, 191 (1st Cir.2011) ("When a plaintiff's anchor claim is a federal cause of action and the court unfavorably disposes of the plaintiff's federal claim at the early stages of a suit, well before trial, the court generally dismisses any supplemental state-law claims without prejudice.").

### 2. Eastport Defendants' Motions[FN13]

**\*13** The Amended Complaint identifies the plaintiff's grounds for suit against all of the Eastport Defendants as the ADA, the Rehabilitation Act, the Maine Health Security Act, 5 M.R.S.A. § 4682, and the Maine Tort Claims Act. *See* Amended Complaint ¶¶ XVI–XIX. The plaintiff seeks compensatory and punitive damages and his costs of suit from each of the Eastport Defendants. *See id.* at 15.

O'Brien seeks dismissal of all claims against her on the bases that (i) the plaintiff's statelaw tort claims fail as a matter of law, (ii) to the extent that the court finds that the plaintiff properly pleads any of those claims, it should decline to exercise supplemental jurisdiction over them, (iii) the plaintiff's civil rights claims pursuant to the Maine Civil Rights Act and 42 U.S.C. § 1983 fail as a matter of law, and (iv) the plaintiff's claims pursuant to the ADA and the Rehabilitation Act fail as a matter of law. *See* O'Brien Motion To Dismiss at 4–11.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

The Eastport Defendants move to substitute the United States as the defendant for any medical malpractice tort claims in the case, *see* Motion To Substitute at 1, and seek the dismissal of all claims against them on the bases of (i) lack of jurisdiction over any medical malpractice tort claims against the United States, (ii) failure to state a tort claim under the Maine Tort Claims Act or the Maine Health Security Act, (iii) failure to state a claim of privacy violation pursuant to possibly applicable federal or state law, (iv) failure to state a claim pursuant to the ADA and the Rehabilitation Act, (v) failure to state a civil rights claim pursuant to 42 U.S.C. § 1983 or the Maine Civil Rights Act, and (vi) failure to state a claim pursuant to the Maine Constitution, *see* Eastport Motion To Dismiss at 5–22. They also argue that the court should dismiss (i) any contract claim, (ii) any claim for punitive damages, and (iii) any claim for injunctive relief against them. *See id.* at 22–24.[FN14]

To the extent that the plaintiff sues O'Brien, Murphy, and Barbee in their official capacities, he effectively sues Eastport. *See, e.g., Ruffin,* 2009 WL 3747189, at *3. My references to "Eastport," hence, include O'Brien, Murphy, and Barbee in their official capacities.

I conclude, as I did with respect to the State Defendants' motion to dismiss, that the Amended Complaint fails to state a viable federal claim. Therefore, I recommend that the court grant the Eastport Defendants' motion to dismiss and, in the absence of a viable federal claim, decline to exercise supplemental jurisdiction over the plaintiff's state-law claims.

### a. Medical Malpractice Tort Claims

In moving to substitute the United States as a party, the Eastport Defendants argue that "substitution is appropriate because Flood appears to have asserted various medical malpractice tort claims against Barbee, Murphy, and O'Brien, who were acting within the scope of their employment with Eastport, a 'deemed' health center" for purposes of the Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), codified at 42 U.S.C. § 233. Motion To Substitute at 7; *see also id.* at 5. The Eastport Defendants note that, "for those claims, Flood's exclusive remedy is against the United States pursuant to the [Federal Tort Claims Act]." *Id.* at 8.

**\*14** Flood opposes the motion to substitute on the basis that the Eastport Defendants misconstrue his claims for retaliation, deliberate indifference, and discrimination as medical malpractice tort claims. *See* Plaintiff's Opposition to Defendants['] Motion To Substitute ("Substitute Opposition") (ECF No. 86) ¶¶ 1–6. In their reply brief, the Eastport Defendants agree that, because the plaintiff disavows that he brings any tort claim in this case, there is no need for substitution, and the United States should not be a party, with the caveat that "in the event the Court were to determine that the Plaintiff actually does assert a tort claim (despite Plaintiff's representations and despite the legal labels), then substitution would be appropriate[.]" Reply to Response to Motion To Substitute (ECF No. 116) at 2 & n.2.

"[T]he plaintiff is both the author and the master of its complaint[,]" and, as such, "has the power to decide what law it will rely upon." *Connectu LLC v. Zuckerberg,* 522 F.3d 82, 93 (1st Cir.2008) (citations and internal punctuation omitted). This "principle extends to a plaintiff's decision as to which causes of action to bring and what jurisdictional arguments to press." *Id.* Although the plaintiff in this case proceeds *pro se,* his arguments against the Motion To Substitute constitute a knowing disavowal of any medical malpractice claims for the purpose of blunting the force of that motion. *See, e.g.,* Substitute Opposition ¶¶ 1–5.

The plaintiff having effectively waived any medical malpractice tort claims, the Motion To Substitute is denied, and the plaintiff's motion for discovery relating to the Motion To Substitute, *see* ECF

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

No. 87, is mooted.

### b. Presumed Section 1983 Claims

As the Eastport Defendants observe, *see* O'Brien Motion To Dismiss at 8; Eastport Motion To Dismiss at 17–18, although the Amended Complaint does not identify section 1983 as a basis for the plaintiff's claims against them, it contains language that might be construed to assert a claim pursuant to 42 U.S.C. § 1983 for deliberate indifference to a serious medical need, in violation of the Eighth Amendment, *see* Amended Complaint ¶¶ VII(E), IX(B).

As noted above, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege four elements: "(1) a violation of rights protected by the Constitution, or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Mullenbach,* 2012 WL 693040, at *5 (citation and internal quotation marks omitted). "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Id.* (citations and internal quotation marks omitted).

The Eastport Defendants seek dismissal of any section 1983 claim against them on three alternative bases: that (i) they were not state actors but, rather, a private entity and its employees, (ii) the plaintiff was on noncustodial probation at the time he received care from them and, hence, was entitled to choose his own health care, and (iii) the plaintiff does not identify a serious medical need to which they allegedly were indifferent. *See* O'Brien Motion To Dismiss at 8–10; Eastport Motion To Dismiss at 17–20.

**\*15** I agree that, on any of these three bases, the Amended Complaint fails to state a plausible claim for relief pursuant to section 1983.

"Ordinarily, a non-governmental organization ... is not subject to § 1983 claims." *Mead v. Independ-ence Ass'n,* 684 F.3d 226, 231 (1st Cir.2012). "In some circumstances, though, the conduct of a private party may be fairly attributed to the State, and therefore may constitute action under color of state law." *Id.* (citation and internal punctuation omitted). "These circumstances are rare, and the plaintiff bears the burden of proving that a private party's acts constitute state action." *Id* . (citations omitted).

Neither the receipt of federal funding nor a designation as a federally qualified health care center suffices to cause an entity or its employees to be state actors for purposes of section 1983. *See, e.g., Mele v. Hill Health Ctr.,* 609 F.Supp.2d 248, 257 (D .Conn.2009) ("The mere fact that [clinics] receive federal funding, and may receive state funding, does not necessarily make [them] a state actor.").

The plaintiff correctly notes that "[p]rivate person[s] may be acting under color of state law when conspiring with state officials to violate others' constitutional rights." Plaintiff's Response/Objection to Defendants['] Motion To Dismiss ("Dismiss Opposition/Eastport") (ECF No. 120) ¶ 50; *see also, e.g., Whitaker v. Sheild,* Civil Action No. 4:05cv130, 2006 WL 1321481, at *7 (E.D.Va. May 3, 2006) ("[A] private individual may be subject to liability under Section 1983 if he willfully collaborates with an official state actor in the deprivation of a federal right."). However, "to state a claim for civil conspiracy under section 1983, a plaintiff must make something more than a naked assertion of conspiracy between a state actor and private parties." *Id.* (citation and internal quotation marks omitted).

The plaintiff alleges, in relevant part, that (i) Love used his influence over Eastport to interfere with the plaintiff's treatment there, including gaining access to the plaintiff's confidential information and influencing Eastport to force the plaintiff to submit to weekly blood draws, *see* Amended Complaint ¶ VI(W), (ii) Eastport allowed Love to manipulate his treatment, *see id.* ¶¶ VII(D)-(E), and (iii) O'Brien acted as a

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

"prosecutor" for Love rather than a mental health nurse, forcing the plaintiff to undergo weekly blood draws to detect whether he was substituting his medications and allowing Love to dictate what medications were available to the plaintiff, *see id.* ¶¶ IX (B), (D).

Yet, for two reasons, he fails to state a plausible claim of a conspiracy between Love and O'Brien or Eastport to deprive him of a federal right. First, as discussed below, he fails to adequately allege a claim of violation of his Eighth Amendment rights. Second, some degree of collaboration between Love and the Eastport Defendants was contemplated by the plaintiff's conditions of probation. *See* Conditions of Probation ("Probation Conditions"), Exh. A (ECF No. 83–1) to Eastport Motion To Dismiss (directing that the plaintiff undergo substance abuse and psychological counseling/treatment "to the satisfaction of the probation officer" and "consent to the release of any counseling/treatment information to [his] probation officer, the district attorney and the court"). Accepting, for purposes of the motions to dismiss, that Love did direct O'Brien to force the plaintiff to submit to weekly blood draws for the purpose of detecting any substitution of medications and that O'Brien complied—the only relevant concrete conduct alleged—such conduct appears to have comported with the Probation Conditions.[FN15]

**\*16** In any event, the plaintiff does not state a cognizable Eighth Amendment claim because he was no longer in custody, but instead on probation, when the Eastport Defendants treated him. In *Luna v. Weiner,* No. Civ.A. 05–2298, 2006 WL 1517747 (D.N.J. May 23, 2006), a parolee made claims similar to those of the plaintiff against a social worker whose therapy sessions the Parole Board assigned him to attend. *See Luna,* 2006 WL 1517747, at *1 (parolee alleged that he had not benefited from therapy, had not received needed medications, and had been harassed by social worker). The court held that his Eighth Amendment claim against the social worker found-

ered for several reasons, among them his failure to "demonstrate that he was in the *physical* custody of the government[.]" *Id.* at *3 (emphasis in original). The court reasoned: "As a parolee, [Luna] had the freedom to exercise normal responsibility for his own welfare, and could have secured any medical attention of his choosing." *Id.* at *4 (citation and internal quotation marks omitted). It concluded: "Once the plaintiff walked beyond the walls of the prison in which he was being held, he regained his ability to care for himself and moved beyond the factual context of his 'cruel and unusual punishment' claims before this Court about medical care." *Id.*

Other courts likewise have held that an individual who is not "in custody," including a probationer or parolee, cannot state an Eighth Amendment claim of deliberate indifference to a serious medical need. *See, e.g., Lynch v. Cannatella,* 810 F.2d 1363, 1375 (5th Cir.1987) ("[T]he eighth amendment prohibition against cruel or unusual punishment is not applicable to cases in which the plaintiffs were not in custody as a result of having been convicted of a crime.") (footnote omitted); *McGhie v. Main,* No. 11–CV–3110 (NGG)(JO), 2011 WL 4852268, at *5 (E.D.N.Y. Oct. 12, 2011) ("McGhie was not incarcerated or institutionalized when, as he alleges, he was deprived of necessary psychiatric care. Though he was on supervised release, and though the Probation Department had previously been providing him with necessary care, he was, upon the cessation of that care, free to find treatment on his own.... The fact that such psychiatric care was a condition of McGhie's supervised release does not alter the analysis."); *Spano v. Satz,* No. 09–60255–CIV., 2011 WL 1303147, at *8 (S.D.Fla. Mar. 31, 2011) ("In the instant case, Plaintiff was no longer 'in custody' after she was released from the Jail into the Community Control Program. Accordingly, the Court finds that the Eighth Amendment was not applicable here and thus Defendant [Community Control Officer] owed Plaintiff no Eighth Amendment duty."). This caselaw is persuasive, and is dispositive of the plaintiff's section 1983 claims

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

against the Eastport Defendants. FN16

Finally, even assuming *arguendo* that the plaintiff was "in custody" for purposes of his Eighth Amendment claim, he fails to allege that the Eastport Defendants were deliberately indifferent to a serious medical need. "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir.1990). "[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation." *Ruiz–Rosa v. Rullán,* 485 F.3d 150, 156 (1st Cir.2007).

**\*17** The plaintiff alleges, in relevant part, that (i) Eastport excluded him from meaningful therapy and allowed the MDOC to manipulate the treatment available for his mental health disabilities, *see* Amended Complaint ¶¶ VII(A), (E), (ii) O'Brien acted as a "prosecutor" for Love by arranging for weekly blood draws to check whether he was substituting his medications and allowing Love to dictate the medications available to him and was "deliberately indifferent to his well-being," *see id.* ¶ IX(B), and (iii) Barbee failed to provide him with an environment conducive to his well-being, *see id.* ¶ X(B). These largely conclusory allegations are not enough to identify a "serious medical need" to which the Eastport Defendants were indifferent. They reflect, at most, a disagreement as to the appropriate course of treatment, falling short of stating a claim for a constitutional violation.

On these bases, the Amended Complaint fails to state a plausible claim for relief against the Eastport Defendants pursuant to section 1983.

### c. ADA, Rehabilitation Act Claims

O'Brien seeks dismissal of the plaintiff's claims

pursuant to Title II of the ADA and the Rehabilitation Act on three alternative grounds: that (i) he does not plead that she excluded him from services on the basis of any articulated disability, at most alleging a malpractice claim disputing her treatment decisions, (ii) he does not allege that he was discriminated against by a public entity, and (iii) there is no individual liability for violations of Title II of the ADA. *See* O'Brien Motion To Dismiss at 10–11. She also seeks dismissal of any claim against her pursuant to Title III of the ADA on the basis that, because the plaintiff is no longer in her care or that of Eastport, he faces no threat of imminent harm requiring injunctive relief, the only proper remedy under Title III. *See* Defendant Ann Elizabeth O'Brien's Reply Memorandum of Law in Support of Motion To Dismiss ("Dismiss Reply/O'Brien") (ECF No. 73) at 4 n.2.

The Eastport Defendants argue that the plaintiff fails to state a claim for relief under the ADA because, (i) for purposes of both Titles II and III, he fails to allege facts sufficient to establish that he has a disability within the meaning of the ADA, (ii) for purposes of Title II, he fails to allege that Eastport is a public entity, and (iii) individuals are not subject to suit pursuant to Title II of the ADA. *See* Eastport Motion To Dismiss at 14–17.

The Eastport Defendants correctly point out that the Amended Complaint fails to state a claim against O'Brien, Murphy, or Barbee in their individual capacities pursuant to Title II of the ADA or section 504 of the Rehabilitation Act. *See DeCotiis,* 842 F.Supp.2d at 363 n.5. The Amended Complaint also fails to state a claim against any of the Eastport Defendants pursuant to Title III. As O'Brien argues, *see* Dismiss Reply/O'Brien at 4 n.2, "money damages are not an option for private parties suing under Title III of the ADA [,]" *Goodwin v. C.N.J., Inc.,* 436 F.3d 44, 50 (1st Cir.2006). The plaintiff does not request any form of relief other than money damages against the Eastport Defendants. *See* Amended Complaint at 15. In any event, even if the plaintiff requested injunctive

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

relief, his claim would fail. He has been discharged from the care of the Eastport Defendants and does not indicate that he is likely ever to seek or receive care from any of them again. *See, e.g.,* Amended Complaint ¶ IX (E). Accordingly, he states no claim for injunctive/prospective relief against them. *See, e.g* ., *Dudley v. Hannaford Bros. Co.,* 333 F.3d 299, 305 (1st Cir.2003)* (“recent Title III cases have required plaintiffs to show a real and immediate threat that a particular (illegal) barrier will cause future harm”); *Louisiana Counseling & Family Servs. Inc. v. Mt. Fuji Japanese Rest.,* Civil Action No. 08–6143, 2011 WL 3273548, at *4 (D.N.J. July 27, 2011) (“A plaintiff has standing to seek injunctive relief under Title III only if the plaintiff has sufficiently demonstrated a past injury in the form of ADA discrimination and the likelihood that the injury will be repeated when the plaintiff returns to the place of discrimination.”).

**\*18** To the extent that the plaintiff sues Eastport pursuant to Title II of the ADA, he fails to state a claim with respect to which relief can be granted because the allegations of the Amended Complaint do not indicate that Eastport is a “public entity.” *See Parker,* 225 F.3d at 5 (to prevail on claim pursuant to Title II of the ADA, a plaintiff must establish, *inter alia,* “that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against”). This court has concluded that a contractor hired to provide medical services to inmates was not, as a matter of law, a public entity for purposes of Title II of the ADA. *See Wynott v. Correctional Med. Servs., Inc.,* Civil No. 08–61–PS, 2008 WL 2061385, at *2 (D.Me. May 13, 2008). Eastport, which the Amended Complaint indicates was merely treating the plaintiff at Love's direction while the plaintiff was on probation, is even further removed from public entity status.

I am mindful that the Rehabilitation Act does permit suit against entities receiving federal financial assistance. *See, e.g., Rowe v. Aroostook Med. Ctr.,* No. 1:09–cv–182–DBH, 2010 WL 3283065, at *9 (D.Me.

Aug. 17, 2010) (rec. dec., *aff'd* Sept. 28, 2010). However, the Amended Complaint does not allege that Eastport receives such assistance. *See* Amended Complaint ¶¶ III, VI. Hence, it fails to state a claim against Eastport pursuant to the Rehabilitation Act.

In any event, as the Eastport Defendants alternatively argue, *see* Eastport Motion To Dismiss at 16, one cannot glean from the well-pleaded facts of the Amended Complaint that the plaintiff had a “disability” for purposes of Titles II and III of the ADA or the Rehabilitation Act. The Amended Complaint is devoid of any allegation regarding the manner in which the plaintiff's impairments substantially limit a major life activity. For that reason alone, the plaintiff's ADA and Rehabilitation Act claims against all of the Eastport Defendants are subject to dismissal.

### d. Presumed HIPAA Claim

The Eastport Defendants next seek dismissal of any privacy violation claim premised on the federal Health Insurance Portability and Accountability Act (“HIPAA”), 42 U.S.C. § 1320 *et seq.,* on the basis that HI PAA does not create a private right of action. *See id.* at 10. They are correct. *See Miller v. Nichols,* 586 F.3d 53, 59 (1st Cir.2009). Thus, any presumed HIPAA claim fails as a matter of law.

### e. Presumed Public Health Service Act Claim

Nor can the plaintiff state a claim with respect to any presumed cause of action pursuant to the Public Health Service Act for privacy violations. As noted above, that act, as well, confers no private right of action. *See Briand,* 223 F.Supp.2d at 250–51.

### f. State–Law Claims

O'Brien requests that the court decline to exercise supplemental jurisdiction over the plaintiff's state-law claims only to the extent that it finds that the plaintiff states a claim with respect to one or more of them. *See* O'Brien Motion To Dismiss at 7. The Eastport Defendants take no position on whether the court should

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

decline to exercise supplemental jurisdiction over the plaintiff's state-law claims, simply arguing that such claims fail on the merits. *See* Eastport Motion To Dismiss at 7–9, 13–14, 20–23. However, consistent with my recommendation regarding the State Defendants' motion to dismiss, in view of the early stage of this litigation, I recommend that the court decline, without analysis of the merits of the state-law claims, to exercise supplemental jurisdiction over them. *See, e.g.,* Ramos–Echevarría, 659 F.3d at 191.

## II. Motions To Amend
### A. Applicable Legal Standards

**\*19** Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed.R.Civ.P. 15(a)(2). Leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc....." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

The First Circuit has explained:

A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed.... As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Scheduling orders, for example, typically establish a cut-off date for amendments (as was apparently the case here). Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed.R.Civ.P. 16(b). This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent. Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show "substantial and convincing evi-

dence" to justify a belated attempt to amend a complaint.

Steir v. Girl Scouts of the USA, 383 F.3d 7, 11–12 (1st Cir.2004) (citations, internal quotation marks, and footnotes omitted).

No scheduling order is in place in the instant case. Hence, the liberal default rule applies. The State Defendants and O'Brien argue that the motions to amend nonetheless should be disallowed on the basis, *inter alia,* that the proposed amendments would be futile. *See* Supplemental Opposition to Motion To Amend ("State Opposition/Amend") (ECF No. 61) at 1–2; Defendant Ann Elizabeth O'Brien's Opposition to Plaintiff's Proposed Second Amended Complaint ("O'Brien Opposition/Amend") (ECF No. 76) at 3–5.[FN17] An amendment is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir.1996). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." Adorno v. Crowley Towing & Trans. Co ., 443 F.3d 122, 126 (1st Cir.2006).[FN18]

### B. Discussion
### 1. Splitting of Claims Into Two Complaints

The ECF docket contains two submissions by the plaintiff characterized by the Clerk's Office as motions to amend his Amended Complaint: (i) a letter to the court dated January 9, 2012, in which the plaintiff requested additional time to submit an amended complaint to correct deficiencies complained of by the State Defendants in their motion to dismiss, *see* ECF No. 36 at 2, and (ii) a document filed on January 26, 2012, titled Plaintiff's Motion for Leave To Amend the Complaint Pursuant to Federal Civil Procedure 15(a)(2), *see* ECF No. 39. Neither filing was accompanied by a proposed amended complaint.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

**\*20** On February 21, 2012, the plaintiff filed a proposed amended complaint against the State Defendants, *see* Second Amended Complaint ("Proposed Complaint/State") (ECF No. 55), and on March 1, 2012, he filed a separate proposed amended complaint against the Eastport Defendants, *see* Second Amended Complaint as to the Eastport Healthcare Defendants ("Proposed Complaint/Eastport") (ECF No. 66). On March 2, 2012, he filed a document titled "List of Exhibits as Material Facts" ("Exhibit List") (ECF No. 69) and 35 exhibits, *see* Exhibits (ECF No. 70).

In conjunction with the filing of the Proposed Complaint/State, the plaintiff also filed, on February 21, 2012, a motion to separate the defendants, *see* ECF No. 53, which all of the defendants opposed, *see* ECF Nos. 62, 63, 65. By order dated May 31, 2012, I denied that motion, noting that "[t]he plaintiff's claims against both the state and private defendants arise from the same core set of facts and are otherwise interrelated" and that "[c]onsiderations of judicial economy and efficiency outweigh the stated inconvenience to the plaintiff of litigating this case simultaneously against all defendants or the asserted prejudice to him, invoked for the first time in his reply memorandum, arising from purported coordination/collusion among the defendants in defending against his claims." ECF No. 91.

The plaintiff continues to rely on two separate proposed amended complaints, one against each group of defendants. This alone warrants the denial of his motions to amend. However, in an abundance of caution, I have also considered whether each proposed complaint is futile for failure to state a claim against the relevant group of defendants. I conclude that both proposed amended complaints are indeed futile, supplying an additional basis for the denial of the plaintiff's motions to amend.

### 2. Futility of Proposed Amended Complaints
#### a. State Defendants
The proposed complaint against the State De-

fendants adds a new defendant, Joseph Ponte, the commissioner of the MDOC, as well as fleshing out in greater detail the plaintiff's allegations. *See* Proposed Complaint/State. However, the proposed complaint is less clear than the operative Amended Complaint as to the nature of the claims brought against each defendant, and does not explain whether claims against individuals are brought in their individual and/or official capacities. Insofar as appears, the plaintiff contends that:

1. The MDOC violated his rights pursuant to the ADA and the Rehabilitation Act by (i) subjecting him to discrimination and disparate treatment by regarding him as being a drug addict and suffering from psychiatric disorders that the MDOC did not recognize as a legitimate, serious medical need and (ii) denying him the benefit of public programs, including probation supervision, by regarding him as a drug addict, *see id.* ¶¶ 88–90;

2. The State Defendants violated his federal constitutional rights to privacy, medical treatment, freedom from cruel and unusual punishment, and freedom from arbitrary punishment, rights that he seeks to vindicate through 42 U.S.C. §§ 1983, 1985, and 1986, *see id.* ¶¶ 1, 90; and

**\*21** 3. The State Defendants violated various state-law rights. *See id.* ¶ 1.

In the body of the proposed complaint, the plaintiff also complains of violations of his right to privacy, invoking both state law and the federal Public Health Service Act. *See, e.g., id.* ¶¶ 32, 76.

In addition to seeking compensatory and punitive damages and costs of suit, the plaintiff requests (i) a declaration that the acts and omissions that he describes violated his rights under the constitution and laws of the United States, (ii) a preliminary and permanent injunction ordering Love and the MDOC to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

preme Court have found insufficient" to state a claim of supervisory liability for purposes of section 1983. *Feliciano–Hernández v. Pereira–Castillo,* 663 F.3d 527, 534 (1st Cir.2011) (citation and internal punctuation omitted).

The proposed complaint accordingly is futile insofar as the plaintiff continues to seek to assert claims pursuant to 42 U.S.C. § 1983 against the State Defendants.

### ii. ADA/Rehabilitation Act Claims

In his proposed complaint, the plaintiff attempts to address deficiencies related to his ADA and Rehabilitation Act claims by describing, in more detail, his claimed impairments and their impact on his activities, *see, e.g.,* Proposed Complaint/State ¶¶ 9–14, and alleging, for the first time, that the MDOC categorically excludes inmates with dual substance abuse/psychiatric disabilities from probation and medical treatment, *see id.* ¶¶ 18–19, 22, 24–26.

These alterations make no difference in the plaintiff's ability to state a claim of disability discrimination against Love, O'Roak, or Ponte. As a matter of law, they are not amenable to suit pursuant to the ADA or the Rehabilitation Act. *See, e.g., DeCotiis,* 842 F.Supp.2d at 363 n.5.

With respect to the MDOC, even assuming *arguendo* that the plaintiff now makes a sufficient showing that he is disabled for purposes of the ADA and the Rehabilitation Act, he does not state a plausible claim that the MDOC discriminated against him on the basis of disability.

Although he does allege, in general terms, that the MDOC systematically discriminates against inmates by "categorically recommending terminating probation supervision because of the probationers['] disability, drug addiction [,]" Proposed Complaint/State ¶ 26, he specifically alleges that the MDOC recom-

mended terminating his probation because it disagreed that his preferred substance abuse therapy was therapeutic, *see id.* ¶ 28. Likewise, Ralph Green, whom the plaintiff alleges "was also ... discriminated against because of his substance abuse disability[,]" *id.* ¶ 26, avers, in relevant part, that his probation officer told him that she would have his probation revoked if he went on methadone or suboxone even though a judge had told him to seek that treatment, *see* Exh. 13–B (ECF No. 70–8) at 3. This reflects a disagreement over treatment for substance abuse, not discrimination based on a disability of drug addiction.

**\*23** Other exhibits referenced in the proposed complaint do not bolster the plaintiff's case: they tend to show that the MDOC made an individualized decision to recommend the termination of his probation, rather than following a written or unwritten disability-based categorical policy. *See, e.g.,* Exh. 10–B (ECF No. 70–15) (probation termination summary by Love); Exh. 15 (ECF No. 70–20) (Love affidavit in support of probable cause to find probation violations). Further, the court, not the MDOC, ultimately terminated the plaintiff's probation after conducting its own individualized assessment. *See* 17–A M.R.S.A. § 1206(6) (court must determine by a preponderance of the evidence whether an individual has inexcusably violated probation conditions).

Similarly, while the plaintiff alleges, in general terms, that the MDOC "failed to provide [him] with a reasonable accommodation of [his] substance abuse and psychiatric disabilities[,]" Proposed Complaint/State ¶ 16, "discriminated against [him] by limiting the availability of programs and activities due to [his] being dually disabled[,]" *id.,* "is systematically excluding inmates with disabilities of anxiety disorders, social phobia and other psychiatric disorders from receiving the benefits of treatment[,]" *id.* ¶ 18, and "instructs Corizon, [its] medical subcontractor, not to medically treat inmates who suffer panic attacks from social phobia, agor[a]phobia, and general anxiety disorders[,]" *id.* ¶ 19, and that he "suffers greatly

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

from being untreated[,]" including suffering "severe stomach pain, bleeding ulcers, migraines, inability to be happy, thoughts of suicide, inability to communicate, and general poor health[,]" *id* . ¶ 21, he describes no specific incident in which he requested or patently required treatment for a particular condition and such treatment was categorically denied, or he qualified for a particular prison program or activity, and it was categorically denied, *see id.* ¶¶ 8–43. These allegations simply are too threadbare and conclusory to state a plausible claim of entitlement to relief under the ADA or the Rehabilitation Act. *See, e.g., Oliveras–Sifre v. Puerto Rico Dep't of Health,* 214 F.3d 23, 27 (1st Cir.2000) ("Appellants merely repeat on appeal the same conclusory statements contained in their complaint, providing us no basis upon which to find that the district court erred in failing to translate their allegations into specific conduct protected by the ADA. Although we construe appellants' claims liberally, it is not our role to conjecture whether an actionable claim lurks beneath their sketchy allegations.") (citations and footnote omitted).[FN19]

Beyond this, exhibits to which the plaintiff refers in his proposed complaint tend to undercut, rather than bolster, his generalized allegations of disability-based denial of prison medical treatment or programming/services, indicating that an individualized assessment was made and that mental health treatment was offered should he wish to avail himself of it, *see* Exhs. 18 (ECF No. 70–23), 25 (ECF No. 70–24).

**\*24** The proposed complaint, hence, fails to make out a *Thompson*-type claim of disability discrimination. *See Thompson,* 295 F.3d at 898 n.4 ("Title II does not categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability.... We hold only that plaintiffs may state a claim under Title II based on their allegations that the parole board failed to perform an individualized assessment of the threat they pose to the community by categorically excluding from consideration

for parole all people with substance abuse histories.").

### iii. Public Health Service Act Violations

To the extent that the plaintiff continues to invoke the Public Health Service Act, *see, e.g.,* Proposed Complaint/State ¶¶ 32, 76, the amendment of his complaint is futile. As noted above, there is no private right of action pursuant to that act. *See, e.g., Briand,* 223 F.Supp.2d at 250–51.

Because the plaintiff has split his claims into two separate proposed amended complaints and, in any event, his proposed complaint against the State Defendants is futile, I deny his motions to amend to the extent that they implicate the State Defendants.

### b. Eastport Defendants

The plaintiff's proposed complaint against the Eastport Defendants contains additional detail regarding those defendants' alleged transgressions as well as the plaintiff's claimed impairments and their impact on his ability to function. *See generally* Proposed Complaint/Eastport. Yet, the proposed complaint is less clear than the operative Amended Complaint as to the nature of the claims brought against each defendant and does not indicate whether claims against individuals are brought in their individual and/or official capacities. Nonetheless, insofar as appears, the plaintiff contends that:

1. Eastport violated his rights pursuant to the ADA and the Rehabilitation Act, subjecting him to discrimination and disparate treatment because it regarded him as a drug addict, including failing to treat his "serious medical needs" stemming from panic attacks and mood disorders and working in concert with the MDOC to fabricate a means to re-incarcerate hi m, *see id.* ¶¶ 82–83;

2. The Eastport Defendants violated his federal constitutional rights to privacy, medical treatment, freedom from cruel and unusual punishment, and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

freedom from arbitrary punishment, rights that he seeks to vindicate through 42 U.S.C. §§ 1983, 1985, and 1986, *see id.* ¶¶ 1, 84; and

3. The Eastport Defendants violated the Maine Civil Rights Act by threatening incarceration to force the plaintiff to waive rights and subjecting him to "cruelly unusual disparate treatment" at their facility. *See id.* ¶ 85. [FN20]

In addition to seeking compensatory and punitive damages and costs of suit, the plaintiff seeks a declaration that the acts and omissions he describes violated his rights under the constitution and laws of the United States and an injunction ordering Eastport to make "reasonable modifications" to its policy of retaliating against disabled individuals. *See id.* at 14.

*25 O'Brien opposes the motions to amend on several grounds, including the failure of the proposed complaint to correct the deficiencies in the plaintiff's first two complaints. *See generally* O'Brien Opposition/Amend. [FN21]

### i. Section 1983 Claims

In his proposed complaint, the plaintiff alleges that the Eastport Defendants violated his federal constitutional rights with respect to both the medical treatment provided, or not provided, to him and the release of his confidential medical information. *See* Proposed Complaint/Eastport ¶¶ 82–84. [FN22]

### (a) State Actors

As a threshold matter, the proposed section 1983 claims against the Eastport Defendants are futile because the plaintiff still does not make out a plausible claim that these defendants are "state actors" for purposes of section 1983. The plaintiff adds an allegation that Eastport receives federal funding. *See* Proposed Complaint/Eastport ¶ 33. However, as noted above, that does not suffice to show that an entity or its employees are state actors. *See, e.g., Mele,* 609

F.Supp.2d at 257. [FN23]

In any event, even if Eastport, Murphy, O'Brien, and/or Barbee were state actors, for the reasons discussed below, the proposed complaint does not cure deficiencies with respect to claimed constitutional violations regarding medical care or state a plausible claim of entitlement to relief with respect to a new allegation of violation of federal constitutional privacy rights.

### (b) Medical Treatment

The proposed complaint continues to fall short of stating a claim of violation by the Eastport Defendants of any constitutional right to be free from cruel and unusual punishment with respect to such care in that the plaintiff was not in custody, but rather on probation, during the relevant time period. *See* Proposed Complaint/Eastport ¶¶ 12, 27–28; *see also, e.g., Luna,* 2006 WL 1517747, at *3–*4.

In addition, as O'Brien argues, *see* O'Brien Opposition/Amend at 3–4, the allegations of the proposed complaint, together with exhibits referenced therein, make clear that the plaintiff's claims that she was "deliberately indifferent" to his serious medical needs, *see* Proposed Complaint/Eastport ¶ 63, boil down to a disagreement with her refusal to continue to prescribe him addictive medications in view of his history of drug abuse, *see* Exhs. 6 (ECF No. 70–11), 26 (ECF No. 70–25), 28 (ECF No. 70–27) at 8–9. This type of disagreement does not amount to a constitutional violation. *See, e.g., Ruiz–Rosa,* 485 F.3d at 156 ("[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation.").

The same is true with respect to new allegations in the proposed complaint regarding asserted constitutional violations in the provision of health care treatment by Eastport, Murphy, and Barbee. These allega-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

tions, as well, center on those defendants' purported deliberate indifference to the plaintiff's serious medical needs, including "unchecked panic attacks[,]" by virtue of their refusal, in view of his drug abuse history, to continue prescribing benzodiazepines to manage his anxiety symptoms. *See, e.g.,* Proposed Complaint/Eastport ¶¶ 12–13, 16, 22–23, 25–27, 32, 35, 38, 74–77.

### (c) Disclosures of Information

**\*26** This court has concluded that "there is a Fourteenth Amendment right to privacy that protects private medical information from unjustified disclosure by governmental actors." *Doe v. Magnusson,* No. Civ. 04–130–B–W, 2005 WL 758454, at *10 (D.Me. Mar. 21, 2005) (rec. dec., *aff'd* Apr. 14, 2005). Yet, "these interests can be curtailed by a policy or regulation that is shown to be reasonably related to legitimate penological objectives of the corrections system[.]" *Id.* (citation omitted).

As a threshold matter, the proposed complaint fails, for the reasons stated above, to raise a plausible claim that the Eastport Defendants were "state" or "governmental" actors. For this reason alone, it is futile with respect to any constitutional privacy violation claim.

Moreover, the proposed complaint alleges, in essence, that the Eastport Defendants (i) forced the plaintiff to sign releases of his confidential information to Love and the MDOC and (ii) disclosed information to Love, the MDOC, the state prosecutor's office, and the court. *See* Proposed Complaint/Eastport ¶¶ 28–29, 34, 47–50, 52–53, 55, 71, 74, 77, 79–80; *see also* Exhs. 9 (ECF No. 70–14), 10 (ECF No. 70–16), 27 (ECF No. 70–26) at 2–3. Yet, as a condition of his probation, the plaintiff was required to consent to releases of "any counseling/treatment information" to Love, the district attorney, and the court. *See* Probation Conditions. The court, accordingly, deemed these conditions reasonably related to a legitimate penological objective of the corrections

system. In the circumstances, any conduct by the Eastport Defendants forcing the plaintiff to sign releases to the MDOC, Love, or the court, or releasing confidential information to those entities or individuals, does not, as a matter of law, constitute a violation of the plaintiff's federal constitutional right to privacy.

For all of these reasons, the proposed complaint is futile insofar as it seeks to assert section 1983 claims against the Eastport Defendants.

### ii. ADA, Rehabilitation Act Claims

The proposed complaint, like the Amended Complaint, continues to fail to state a claim against:

1. Any of the Eastport Defendants pursuant to Title III of the ADA, in that, although the plaintiff does seek injunctive relief against Eastport, he lacks standing to do so in view of the fact that he does not indicate that he is likely ever to seek or receive care from that entity again. *See, e.g., Goodwin,* 436 F.3d at 50; *Dudley,* 333 F.3d at 305; *Louisiana Counseling,* 2011 WL 3273548, at *4;

2. O'Brien, Murphy, or Barbee in their individual capacities pursuant to either Title II of the ADA or the Rehabilitation Act, as individuals are not amenable to suit thereunder. *See, e.g., DeCotiis,* 842 F.Supp.2d at 363 n.5.

3. Eastport pursuant to Title II of the ADA because nothing in the proposed complaint indicates that it is a "public entity," defined as "any State or local government" or "any department, agency, ... or other instrumentality of a State ... or local government." *B.N. ex rel. A.N. v. Murphy,* Cause No. 3:09–CV–199–TLS, 2011 WL 5838976, at *5 (N.D.Ind. Nov. 16, 2011) (quoting 42 U.S.C. § 12131(1)); *see also, e.g., Wynott,* 2008 WL 2061385, at *2; or

**\*27** 4. Any of the Eastport Defendants pursuant to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

the ADA or the Rehabilitation Act, because the well-pleaded allegations of the complaint, together with exhibits referenced therein, show that the crux of the plaintiff's complaint against them is a disagreement over prescribed medications and/or treatments. That does not amount to discrimination based on disability. *See, e.g., Hardy v. Diaz,* No. 9:08–CV–1352 (GLS/ATB), 2010 WL 1633379, at *9 (N.D.N.Y. Mar. 30, 2010) (rec. dec., *aff'd* Apr. 21, 2010) ("[T]he ADA and RA [Rehabilitation Act] afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities.") (citation and internal quotation marks omitted); *see also, e.g., Cushing v. Moore,* 970 F.2d 1103, 1109 (2d Cir.1992) (patients of drug treatment clinic failed to state claim under Rehabilitation Act based on termination of "take-home" methadone treatment because "section 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question. As a corollary, therefore, § 504 must allow a federally-funded program, such as the clinic here, the ability to consider a patient's handicap where that handicap gives rise to, or at least contributes to, the need for services.") (citation and internal quotation marks omitted).

The proposed complaint, accordingly, is futile insofar as it seeks to assert ADA and Rehabilitation Act claims against any of the Eastport Defendants.

### iii. Public Health Service Act Violations

To the extent that the plaintiff continues to invoke the Public Health Service Act, *see, e.g.,* Proposed Complaint/Eastport ¶¶ 54–55, 79, the amendment of his complaint is futile. There is no private right of action pursuant to that act. *See, e.g., Briand,* 223 F.Supp.2d at 250–51.

Because the plaintiff has split his claims into two

separate proposed amended complaints and, in any event, his proposed complaint against the Eastport Defendants is futile, I deny his motions to amend to the extent that they implicate the Eastport Defendants.

### III. Conclusion

For the reasons that follow, I **DENY** the Eastport Defendants' motion to substitute (ECF No. 82), **MOOTING** the plaintiff's request for discovery bearing on that motion (ECF No. 87), **DENY** the plaintiff's motions to amend his complaint for a third time (ECF Nos. 36 and 39), and recommend that the court (i) **GRANT** the defendants' motions to dismiss the operative Amended Complaint (ECF Nos. 26, 41, and 83) for failure to state a claim with respect to any federal cause of action and (ii) **DECLINE** to exercise supplemental jurisdiction over the plaintiff's state-law claims, dismissing those claims without prejudice. The adoption of that recommendation would **MOOT** the plaintiff's P/I motion (ECF No. 32), the State Defendants' objection to materials filed in support of that motion (ECF No. 74), and the plaintiff's motion for discovery with respect to John and Jane Doe (ECF No. 89).

FN20. The plaintiff also alleges, in the body of his proposed complaint, that one or more of the Eastport Defendants violated 42 U .S.C. § 290dd, the Public Health Service Act. *See, e.g.,* Proposed Complaint/Eastport ¶¶ 54–55, 79.

FN1. As of September 23, 2011, Flood had filed a total of five cases in this court pertaining to the revocation of his probation in January 2010: two petitions for habeas relief pursuant to 28 U.S.C. § 2254 and two suits pursuant to 42 U.S.C. § 1983, in addition to the instant suit. *See* ECF No. 6 at 1–2. He has since filed a sixth case, in the form of a third habeas petition, which I have recommended that the court deny. *See* ECF No. 4, *Flood v. Barnhart,* No. 1:12–cv–174–DBH.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
**(Cite as: 2012 WL 5389533 (D.Me.))**

**FN2.** The defendants, apart from the unknown John Doe and Jane Doe, are the Maine Department of Corrections ("MDOC"), Charles O'Roak, and William Love (collectively, the "State Defendants"), as well as Eastport Health Care, Inc. ("Eastport"), Tari Murphy, Ann O'Brien, and Karen Barbee (collectively, the "Eastport Defendants"). *See* Amended Complaint at 1. The plaintiff indicates that he sues the defendants both in their official and individual capacities. *See id.* O'Brien is represented jointly by her own separate counsel and by the United States and Eaton Peabody for various purposes. *See, e.g.,* Motion To Dismiss ("Eastport Motion To Dismiss") (ECF No. 83) at 1 n.1.

**FN3.** The First Circuit has instructed that, in reviewing a complaint for sufficiency pursuant to Rule 12(b)(6), a court "should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011) (citation and internal punctuation omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id.* "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility ." *Id.* (citation and internal quotation marks omitted).

**FN4.** The Amended Complaint does not define "C.O.R.U.S" but does indicate that the C.O.R.U.S. is housed within the MDOC website. *See* Amended Complaint ¶ VI(Y).

**FN5.** The Amended Complaint does not define "DSAT." However, an exhibit provided by the plaintiff in support of his motions for a preliminary injunction and to amend his complaint indicates that the acronym stands for "Differential Substance Abuse Treatment." Exh. 5 (ECF No. 70–10).

**FN6.** According to a docket sheet excerpt supplied by the Eastport Defendants, the plaintiff was adjudged by the Maine Superior Court on January 25, 2010, to have violated one or more of the conditions of his probation. *See* Exh. B (ECF No. 83–2) to Eastport Motion To Dismiss. The court revoked the order of probation that it had previously entered and ordered the plaintiff to serve five years of the suspended portion of his sentence. *See id.* The docket sheet excerpt, part of an official public record, properly is taken into consideration for purposes of the pending motions to dismiss. *See, e. g., Alternative Energy,* 267 F.3d at 33 (court may consider official public records without converting a Rule 12(b)(6) motion into a motion for summary judgment).

**FN7.** The regulations found in 42 C.F.R. part 2 "were enacted pursuant to the provisions of the Drug Abuse Prevention, Treatment, and Rehabilitation Act, 21, U.S.C. § 1175, and were later transferred into the Public Health Service Act, 42 U.S.C. § 290dd–2. *See* 42 C.F.R. § 2.1 and 2.2." *McCloud v. Board of Dirs. of Geary Cmty. Hosp.,* No. 06–1002–MLB, 2006 WL 2375614, at *3 (D.Kan. Aug. 16, 2006) (footnote omitted). I will refer to claims pursuant to those provisions as "Public Health Service Act" claims.

**FN8.** Indeed, this court has dismissed four of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
(Cite as: 2012 WL 5389533 (D.Me.))

the five other cases that the plaintiff has filed challenging his probation revocation and re-incarceration, and I have recommended that the court dismiss the fifth.

FN9. "Although *Heck* dealt with a 42 U.S.C. § 1983 claim, the reasoning of *Heck* has been applied to 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 claims as well." *Stubbs v. City of Wilkes–Barre, Pa.,* Civil No. 3:11–CV–00452, 2011 WL 1871391, at *2 (M.D.Pa. Mar. 31, 2011) (rec. dec., *aff'd* May 16, 2011).

FN10. My research indicates that the plaintiff's allegations that Love spread falsehoods, for example, that he entered false information in the MDOC website, *see* Amended Complaint ¶ VI(Y), and falsely informed people in the community that the plaintiff was sent back to prison for not providing for his family and neglecting his parental duties, *see id.* ¶ VI(S), do not implicate federal constitutional rights redressable through section 1983. *See, e.g., Lluberes v. Uncommon Prods., LLC,* 663 F.3d 6, 23 (1st Cir.2011) (noting that defamation is a state cause of action and that, although U.S. Supreme Court caselaw has "placed constitutional limits on state libel claims, it did not itself create a federal cause of action for libel") (citation and internal quotation marks omitted); *Calhoun v. Grant,* No. 11–60399–CIV–UNGARO, 2011 WL 1674990, at *2 (S.D.Fla. Mar. 29, 2011) (rec. dec., *DI I6* May 3, 2011) ("Although libel is actionable under the laws of most states, it is not a constitutional deprivation that may be raised in a § 1983 action, even against a state actor.").

FN11. The Amended Complaint indicates that no ADA or Rehabilitation claim is brought against O'Roak. *See* Amended Complaint ¶ XIV.

FN12. Courts have held that plaintiffs may sue individual defendants *in their official capacities* for prospective injunctive relief pursuant to Title II of the ADA and/or the Rehabilitation Act. *See, e.g., Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009); *Miranda B. v. Kitzhaber,* 328 F.3d 1181, 1188–89 (9th Cir.2003). However, as noted above, a lawsuit against an individual in his or her official capacity is a lawsuit against that person's office, *see Ruffin,* 2009 WL 3747189, at *3, in this case, the MDOC.

FN13. On August 13, 2012, the plaintiff filed a surreply with respect to the Eastport Defendants' motion to dismiss. *See* ECF No. 126. The filing of this document without leave of court in itself warrants its disregard. In any event, nothing stated therein alters my recommendation that the court grant the Eastport Defendants' motion.

FN14. The Eastport Defendants note that, to the extent that their arguments overlap with those made by O'Brien, O'Brien asks the court to treat her separate brief as her motion on those points and, to the extent that the Eastport Defendants cover claims not contemplated in O'Brien's motion, the court treat the Eastport Defendants' motion as O'Brien's motion as to those issues. *See* Eastport Motion To Dismiss at 1 n.1.

FN15. The plaintiff's Probation Conditions, contained within an official public record, properly are taken into consideration for purposes of the Eastport Defendants' motions to dismiss. *See, e. g ., Alternative Energy,* 267 F.3d at 33 (court may consider official

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
(Cite as: 2012 WL 5389533 (D.Me.))

public records without converting a Rule 12(b)(6) motion into a motion for summary judgment). The plaintiff protests the Eastport Defendants' reliance on his Probation Conditions on the bases that the Maine Superior Court's extension of those conditions past April 7, 2009, was illegal and that he received no notice of the new, illegal conditions of probation set on February 9, 2009. *See* Dismiss Opposition/Eastport ¶¶ 25–36, 66. As the Eastport Defendants rejoin, *see* Defendants' Reply Memorandum in Support of Their Motion To Dismiss ("Dismiss Reply/Eastport") (ECF No. 125) at 3–4, these conclusory allegations do not suffice to call into question the Maine Superior Court's presumptively valid order.

FN16. The plaintiff disputes that he was free, while on probation, to choose where to seek medical treatment or counseling. *See* Dismiss Opposition/Eastport ¶ 60. Yet, Love's directive that the plaintiff receive substance abuse and mental health treatment at Eastport did not render the plaintiff "in custody" for purposes of his Eighth Amendment claim. *See, e.g., Luna,* 2006 WL 1517747, at *3–*4; *McGhie,* 2011 WL 4852268, at *5.

FN17. In their reply memorandum in support of their motion to dismiss, the Eastport Defendants also argue that the plaintiff's proposed amendments, as discussed in his opposition to that motion, would be futile. *See generally* Dismiss Reply/Eastport.

FN18. As noted above in discussing the legal standard applicable to motions to dismiss, a court may consider documents referenced in a complaint without converting a motion to dismiss into a motion for summary judgment, even if those documents are not physically appended to the complaint. *See, e.g., Beddall*

*v. State St. Bank & Trust Co.,* 137 F.3d 12, 16–17 (1st Cir.1998). The plaintiff and O'Brien both have done so, *see, e.g.,* O'Brien Opposition/Amend at 4; Plaintiff Andrew Flood's Reply Memorandum to Defendant Ann Elizabeth O'Brien's Opposition to Plaintiff's Second Amended Complaint ("Amend Reply/O'Brien") (ECF No. 77) ¶¶ 1–13, and I consider it appropriate to do so, as well.

FN19. The plaintiff's further allegations that the MDOC increased his custody level status based upon his substance abuse treatment medications, *see* Proposed Complaint/State ¶ 33, and excluded him from meaningful access to the courts, apparently also allegedly as a form of disability discrimination, *see id.* ¶ 34, suffer from the same flaws. They are generalized allegations that do not demonstrate a plausible claim of entitlement to relief.

FN21. In his reply to O'Brien's opposition to his motions to amend, the plaintiff states that he wishes to assert a newly discovered claim pursuant to 21 U.S.C. § 801. *See* Amend Reply/O'Brien at 7–8. He asserts that the MDOC, acting through O'Brien, violated section 801 by excluding him from medical treatment. *See id.* at 7. The plaintiff cannot bootstrap a new cause of action into his proposed complaint by mentioning it for the first time in a reply memorandum in support of a motion to amend. In any event, the cited statute, which sets forth congressional findings regarding controlled substances, has nothing to do with O'Brien's decisions regarding which medications to prescribe the plaintiff, regardless of whether those decisions were influenced by the MDOC. *See* 21 U.S.C. § 801.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)
(Cite as: 2012 WL 5389533 (D.Me.))

FN22. Insofar as appears, the plaintiff complains that the Eastport Defendants were deliberately indifferent to his serious medical needs in violation of his Fifth Amendment right to seek medical treatment, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment right to be free from arbitrary punishment. *See* Proposed Complaint/Eastport ¶ 84. Regardless of whether the Fifth, the Eighth, or the Fourteenth amendment applies, the standard is the same. *See, e.g., Caiozzo v.. Koreman,* 581 F.3d 63, 72 (2d Cir.2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); *Roseboro v. Gillespie,* 791 F.Supp.2d 353, 381 n.33 (S.D.N.Y.2011) ("The due process clause of the Fifth Amendment applies to claims by pre-trial detainees of excessive force and of deliberate indifference to medical needs. Whether Roseboro's claims arise under the Fifth or Eighth Amendment, the analysis remains the same.") (citations and internal quotation marks omitted).

FN23. Nor does the proposed complaint make out a plausible claim that the individual Eastport Defendants were "state actors" for purposes of section 1983 by virtue of a conspiracy to deprive the plaintiff of federally protected rights. Despite new allegations, the gravamen of the proposed complaint remains that the Eastport Defendants (i) forced the plaintiff to sign releases of information permitting Love and the MDOC to access his confidential treatment information and (ii) allowed Love and the MDOC to influence their treatment decisions with respect to the plaintiff, for example, as to which anti-anxiety medications he would be prescribed and whether he would be permitted to complete a DSAT treatment program. *See, e.g.,* Proposed Complaint/Eastport ¶¶ 27–29, 43–45, 69–70, 80. As noted above, the plaintiff was required as a condition of probation to complete substance abuse and psychological counseling/treatment to Love's satisfaction and to sign releases permitting Love and the MDOC to access his confidential treatment information. *See* Probation Conditions. Against that backdrop, the proposed complaint, like the Amended Complaint, offers nothing but naked assertions that the individual Eastport Defendants conspired with the MDOC and Love to deprive the plaintiff of federally protected rights.

D.Me.,2012.
Flood v. Maine Dept. of Corrections
Not Reported in F.Supp.2d, 2012 WL 5389533 (D.Me.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3241431 (E.D.N.Y.)
**(Cite as: 2012 WL 3241431 (E.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Said GSSIME, Plaintiff,
v.
Nassau County Judge Paul KAWANTA, Nassau
County Courthouse, Nassau County District Attorney
Dennis Dillon, Nassau County Legal Aid Attorneys
Kenneth Ross and William Johnson, and Defense
Attorney Jhon Bray, Defendants.

No. 12–CV–2533(JS)(ETB).
Aug. 2, 2012.

Said Gssime, Coxsackie, NY, pro se.

No Appearance for Defendants.

*ORDER*

SEYBERT, District Judge.

**\*1** By Order dated June 21, 2012, the undersigned conditionally dismissed the *in forma pauperis* Complaint filed by incarcerated *pro se* plaintiff Said Gssime ("Plaintiff") on May 14, 2012. Given that Plaintiff had filed nine *in forma pauperis* Complaints in this Court, five of which had been dismissed for failure to state a claim upon which relief may be granted,[FN1] the Court revoked his *in forma pauperis* status pursuant to the Prison Litigation Reform Act's "three strikes" provision outlined in 28 U.S.C. § 1915(g). *See Gssime v. Wasserman, et al.,* 09–CV–5674 (Order revoking *in forma pauperis* status dated August 3, 2012, Seybert, D.J.).

FN1. *See Gssime v. Psychotheraptist Ms. ADA Sandoval,* 09–CV–4465 (RRM)(RER);

*Gssime v. Psychotherapist Ms. ADA Sandoval,* 09–CV2820 (RRM)(ALC); *Gssime v. Attorney Albert Talero,* 09–CV–2822 (RRM)(ALC); *Gssime v. Advanced Center of Psychotherapy,* 09–CV2823 (RRM)(ALC); *Gssime v. Bray, et al.,* 06–CV–04988 (JS)(ETB).

Pursuant to this Court's June 21, 2012 Order, Plaintiff has timely filed the $350.00 filing fee. Plaintiff was cautioned, however, that his payment of the filing fees does not except him from the requirements of 28 U.S.C. § 1915A and that the Court is required to dismiss a complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. *See* Order, dated June 21, 2012, Seybert, D.J.; *see also* 28 U.S.C. § 1915(e)(2)(B) (i-iii); 28 U.S.C. § 1915A(a) & (b); *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). The Court has reviewed Plaintiff's Complaint and, in accordance with 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A, now *sua sponte* dismisses the Complaint for failure to state a claim upon which relief may be granted and because it seeks monetary relief from Defendants who are immune from such relief.

*DISCUSSION*

I. *Standard of Review*

Given Plaintiff's *pro se* status, the Court is mindful that his *"pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers ." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). However, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3241431 (E.D.N.Y.)
**(Cite as: 2012 WL 3241431 (E.D.N.Y.))**

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1953, 173 L.Ed.2d (2009), and if a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). However, if amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Cuoco,* 222 F.3d at 112.

Regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to *sua sponte* dismiss a frivolous case. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir.2000) (a district court may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee); *see also Hawkins–El III v. AIG Federal Savings Bank,* 334 F. App'x 394, 395 (2d Cir. June 18, 2009) (affirming district court's *sua sponte* dismissal of fee paid frivolous complaint); *Reyes v. Reyes,* No. 11–CV–2536 (KAM), 2011 WL 3625562, *2 (E.D.N.Y. Aug. 16, 2011) (dismissing fee paid complaint *sua sponte* ); *Gianello v. Port Authority of N.Y. and N.J.,* No. 11–CV–3829 (JGK), 2011 WL 2436674 (S.D.N.Y. June 16, 2011) ("The Court has the authority to dismiss *sua sponte* a complaint, or portion thereof, for which a plaintiff has paid the filing fee where the plaintiff presents no arguably meritorious issue.").

**\*2** The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. § 1915(e)(2)(B).

## II. *The Complaint*

Plaintiff's Complaint is difficult to comprehend. It appears that Plaintiff seeks to challenge his underlying 1998 criminal conviction in Nassau County Court pursuant to Section 1983.[FN2] The Complaint is largely comprised of a disjointed narrative and diatribe. For example, Plaintiff claims that his "victims were from a[J]ewish decent [sic] [and then-Nassau County District Attorney Denis Dillon] was also from a[J]ewish decent [sic] and Plaintiff, who is a half [F]rench and a

half Moroccan [C]hristian decent [sic] was the victim of racial discrimination and that's simply because of his name, race, origins, ethnicity.... Compl. at page 8.[FN3] According to the Complaint, the claims arise "from the acts of [sic] the omissions of the defendants, details of said acts or omissions are as ... for [u]njust conviction, injustice, abuse of power in violation of the plaintiff's due process of law, and in violation of the State and United States Constitutions." Compl. at page 4. Plaintiff claims that, on April 30, 1997, he "was arrested and [has] wrongfully been placed behind bars for a crime he didn't commit." *Id.* Prior to May 5, 1997, when Judge Goodman is alleged to have assigned two Legal Aid Attorneys (Defendants Kenneth Ross and William Johnson in this action) to represent the Plaintiff in his pretrial criminal proceedings, Plaintiff claims that he was tortured by unnamed officers at the Nassau County Correctional Center, who are alleged to have been ordered to torture him by then-Nassau County D.A. Dillon. *Id.* Plaintiff describes that his "top teeth has [sic] been broken there [sic] are so called evidence to prove that the dental surgeon at the Nassau County Medical Center had removed them from the inside gums in small pieces, since Plaintiff was tortured behind the glass and close[d] doors ...." Compl. at page 5. Plaintiff further claims that his assigned Legal Aid Attorneys "have illegally signed a waiver of Plaintiff's rights without even visiting with him and without his consent which is fraud, perjury, and discrimination against the Constitutional rights of the Plaintiff...." *Id.*

FN2. Plaintiff was convicted of arson in the second degree and criminal contempt in the first degree after he set fire to a home in which his young daughter, estranged wife and in-laws were sleeping. He was sentenced, respectively, to concurrent terms of 12 1/2 to 25 years and 1 1/3 to 4 years in prison. *See Gssime v. New York State Div. of Parole,* 84 A.D.3d 1630, 1631, 923 N.Y.S.2d 307, 308 (3d Dep't 2011).

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3241431 (E.D.N.Y.)
**(Cite as: 2012 WL 3241431 (E.D.N.Y.))**

FN3. Plaintiff's Complaint begins on the Court's Section 1983 complaint form and has annexed to it an additional 11 typed pages setting forth Plaintiff's "Statement of Claim." For clarity, the Court will refer to these pages by the number assigned by the Electronic Case Filing System ("ECF") to each such page. Plaintiff has also annexed to his Complaint a 25–page exhibit that appears to be an Application for a Writ of Error *Coram Nobis* and a Notice of Motion to Vacate the Judgment of Conviction addressed to the Nassau County Court.

According to the Complaint, Justice Kawanta, who is alleged to have presided during Plaintiff criminal trial and pretrial proceedings, ordered a mental health competency exam of Plaintiff resulting in an examination of Plaintiff by two court-appointed psychiatrists. Compl. at page 7. Plaintiff complains that his attorneys were not notified about the examination. *Id.* Plaintiff further claims that he "was not represented by an [a]ttorney during all pre-trial legal proceedings which is a violation of his due process of law ...." Compl. at page 11.

As a result of the foregoing, Plaintiff seeks to recover eighty-five million dollars ($85,000,000.00) as well as his "[i]mmediate relief from his defective and unconstitutional conviction." Compl. at page 16.

III. *Immunity*

**\*3** Plaintiff's claims against the Nassau County District Attorney, Justice Kawanta, and the Nassau County Courthouse are barred by immunity.

A. *Prosecutorial Immunity—Nassau County District Attorney*

Plaintiff seeks to sue the Nassau County District Attorney for alleged "act and omissions" leading to the Plaintiff's "unjust conviction." The Nassau County District Attorney is entitled to absolute prosecutorial

immunity from Plaintiff's damages claims. The Second Circuit has long held that:

Absolute immunity affords 'complete protection from suit,' *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because it gives 'public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities,' *Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir.1987), so that they will not feel 'constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages,' *Imbler v. Pachtman,* 424 U.S. 409, 424–25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The doctrine's nature 'is such that it "accords protection from ... any judicial scrutiny of the motive for and reasonableness of official action," ' *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) (quoting *Robinson v. Via,* 821 F.2d 913, 918 (2d Cir.1987)), even where the challenged conduct was motivated by a wrongful motive or even malice, *Bernard v. County of Suffolk,* 356 F.3d 495, 503 (2d Cir.2004) (citing *Cleavinger v. Saxner,* 474 U.S. 193, 199–200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)).

*In re NYSE Specialists Securities Litigation,* 503 F.3d 89, 95–96 (2d Cir.2007). Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities, *i.e.,* those acts "intimately associated with the judicial phase of the criminal process," *Imbler,* 424 U.S. at 430, 96 S.Ct. 984; *see also Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir.2001), but not for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler,* 424 U.S. at 430–1, 96 S.Ct. 984. Absolute prosecutorial immunity applies, *inter alia,* when a prosecutor prepares to initiate and pursues a prosecution, *see, e.g., Kent v. Cardone,* 404 F. App'x 540, 542–43 (2d Cir. Jan. 5, 2011); *Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006), or engages in

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3241431 (E.D.N.Y.)
**(Cite as: 2012 WL 3241431 (E.D.N.Y.))**

administrative duties that are directly connected with the conduct of a trial, *Van de Kamp v. Goldstein,* 555 U.S. 335, 342–43, 129 S.Ct. 855, 861–2, 172 L.Ed.2d 706 (2009).

Here, Plaintiff has alleged no conduct by the Nassau County District Attorney that falls outside the scope of prosecutorial immunity as defined by federal law. Accordingly, Plaintiff's damages claims against the Nassau County District Attorney are barred by absolute prosecutorial immunity and are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A.

B. *Judicial Immunity–Justice Paul Kawanta*

**\*4** "It is well settled that 'judges generally have absolute immunity from suits for money damages for their judicial actions' and that 'even allegations of bad faith or malice cannot overcome judicial immunity.' " *McKeown v. N.Y. State Commission on Judicial Conduct,* 377 F. App'x 121, 123 (2d Cir.2010) (quoting *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009)). Unless a judge acts "in the clear absence of all jurisdiction," he or she is protected by judicial immunity. *Tucker v. Outwater,* 118 F.3d 930, 933 (2d Cir.1997) (citation omitted). However, "[a]s a general matter, judges are not absolutely immune from suits for prospective injunctive relief." *McKeown,* 2010 WL 1977825 at \*2 (citing *Mireles v. Waco,* 502 U.S. 9, 10 n. 1, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (*per curiam*). An exception to this rule is provided by Section 1983, which reads in relevant part that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Caroselli v. Curci,* 371 F. App'x 199, 202 (2d Cir.2010) (injunctive relief against state court judges is statutorily barred by § 1983) (citing *Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999) (*per curiam*) ).

Here, given a liberal construction, Plaintiff's

claims against Justice Kawanta involve his performance of his judicial function. Specifically, Plaintiff appears to challenge Justice Kawanta's orders during his underlying criminal proceeding, including that Plaintiff undergo a mental examination. Such acts were clearly taken while Justice Kawanta was acting in his judicial role in the criminal proceeding. Accordingly, Plaintiff's claim for money damages against Justice Kawanta are barred by absolute judicial immunity from suit. To the extent that Plaintiff seeks injunctive relief against Justice Kawanta, he does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Accordingly, § 1983 relief is not available and Plaintiff claims against Justice Kawanta are DISMISSED WITH PREJUDICE.

C. *Eleventh Amendment Immunity–The Nassau County Courthouse*

To the extent that the Plaintiff names the Nassau County Courthouse as a Defendant and seeks relief against it under § 1983, it is immune from such suit under the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As agencies or arms of the State of New York, the courts are immune from suit under the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Saint–Fleur v. City of New York,* No. 99–CV–10433 (WHP), 2000 WL 280328, \*2 (S.D.N.Y. Mar. 14, 2000) (collecting cases); *Vishevnik v. Supreme Court,* 99–CV–3611, 1999 WL 796180, \*1 (S.D.N.Y. Oct. 6, 1999) ("agencies, such as the state courts, are absolutely immune from suit [in federal court], regardless of the relief sought"); *Carp v. Supreme Court,* No. 98–CV–0201, 1998 WL 236187 at \*2 (N.D .N.Y. May 5, 1998) ("the State Supreme Court and the Appellate Division are ... immune from suit under the Eleventh Amendment"); *see also Mathis v. Clerk of the First Dep't,* 631 F.Supp. 232, 234 (S.D.N.Y.1986) ("the Appellate

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3241431 (E.D.N.Y.)
**(Cite as: 2012 WL 3241431 (E.D.N.Y.))**

Division, a state court, is not amenable to suit under 42 U.S.C. § 1983 ... on the grounds that it is immune from suit by virtue of the Eleventh Amendment."). Accordingly, Plaintiff's claims against the Nassau County Courthouse are barred by the Eleventh Amendment and are therefore DISMISSED WITH PREJUDICE.

IV. *Section 1983 Claims Against Ross, Johnson and Bray*

**\*5** Section 1983 provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United states ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person action under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999); *see also Rosa R. v. Connelly,* 889 F.2d 435, 440 (2d Cir.1989).

Generally, attorneys, whether with the Legal Aid Society, court-appointed or privately retained, are not state actors for purposes of Section 1983. *See Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *see also Brown v. Legal Aid Society,* 367 F. App'x 215, 216 (2d Cir. Feb. 23, 2010) (holding that a public defender does not act under color of state law when performing a lawyer's tradi-

tional functions as counsel to a defendant in a criminal proceeding); *Schnabel v. Abramson,* 232 F.3d 83, 86–87 (2d Cir.2000) ("a legal aid society is ordinarily not a state actor"); *Flores v. Levy,* No. 07–CV–3753 (JFB)(WDW), 2008 WL 4394681, at * 7 (E.D.N.Y. Sept. 23, 2008) (accord). Nevertheless, liability may be imposed under Section 1983 upon private individuals who are not state actors pursuant to a conspiracy theory. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324–325 (2d Cir.2002). In order to state a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello,* 292 F.3d at 324–325.

As is readily apparent, the allegations in the Complaint are insufficient to state a Section 1983 conspiracy claim against Defendants Ross, Johnson and Bray.[FN4] Accordingly, Plaintiff's Section 1983 claims against Defendants Ross, Johnson and Bray are dismissed.

> FN4. Even if Plaintiff were to amend his Complaint to include allegations supporting a conspiracy, all of the challenged conduct occurred in 1997–98, well beyond the three (3) year statute of limitations applicable to Section 1983 and 1985 claims. *See, e.g.,* *Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989) ( Section 1983 limitations period is three years in New York); *Bezerra v. County of Nassau,* 846 F.Supp. 214, 220 (E.D.N.Y.1994) (N.Y.C.P.L.R. § 214(5)'s three year statute of limitations applies to Section 1983 and 1985 claims).

V. *Section 1983 Claims Seeking Prospective Injunctive Relief*

Apart from the fact that any Section 1983 claims arising from conduct alleged to have occurred during

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3241431 (E.D.N.Y.)
**(Cite as: 2012 WL 3241431 (E.D.N.Y.))**

1997–98 is barred by the three-year statute of limitations, Plaintiff's claim for prospective injunctive relief is implausible because he seeks only his "[i]mmediate release from his defective and [u]nconstitutional conviction." Compl. at page 16. It is well-established that where " 'a prisoner's victory in a § 1983 suit would necessarily demonstrate the invalidity of his conviction or sentence," the § 1983 suit must be dismissed, since a *habeas* petition is the appropriate vehicle by which to request relief from illegal confinement.' " *Ingram v. Herrick,* No. 11–CV–1318, 2012 WL 1352922, at *1 (2d Cir. Apr. 19, 2012) (quoting *McKithen v. Brown,* 481 F.3d 89, 102 (2d Cir.2007) (emphasis omitted); *see also Heck v. Humphrey,* 512 U.S. 477, 481–82, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Plaintiff has already sought relief from his alleged illegal confinement, having filed a petition for a writ of *habeas corpus* on July 15, 2002. Senior Judge Weinstein denied that petition in its entirety in a comprehensive and well-reasoned Memorandum and Order dated October 29, 2003. *See Gssime v. Greiner,* No. 02–CV–4602(JBW), 03–Misc–0066(JBW), 2003 WL 23185772 (E.D.N.Y. Oct. 29, 2003) and Plaintiff has not appealed the October 29, 2003 Memorandum and Order. Accordingly, the injunctive relief sought by Plaintiff in his instant Complaint is unavailable.

*CONCLUSION*

**\*6** For the reasons set forth above, Plaintiff's fee-paid Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

E.D.N.Y.,2012.
Gssime v. Kawanta
Not Reported in F.Supp.2d, 2012 WL 3241431 (E.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3025894 (M.D.Tenn.)
**(Cite as: 2011 WL 3025894 (M.D.Tenn.))**



Only the Westlaw citation is currently available.

United States District Court,
M.D. Tennessee,
Nashville Division.
Samuel JEFFERSON, Plaintiff,
v.
FERRER, POIROT, AND WANSBROUGH, et al.,
Defendants.

No. 3:10–0754.
July 25, 2011.

Samuel Jefferson, Nashville, TN, pro se.

Andrew R. Rogoff, Franklin Thomas Pyle, Pepper Hamilton LLP, Philadelphia, PA, James W. Bewley, Allyn R. Gibson, Jody E. O'Brien, Samuel Lanier Felker, Bass, Berry & Sims, Stites & Harbison, PLLC, Derek C. Jumper, J. Matthew Kroplin, Frost, Brown & Todd, LLC, Joshua D. Baker, Tennessee Attorney General's Office, Nashville, TN, for Defendants.

#### REPORT AND RECOMMENDATION

JOHN S. BRYANT, United States Magistrate Judge.
**\*1 TO: The Honorable Kevin H. Sharp**

In this consolidated case (Docket Entry No. 78), Defendant Ferrer, Poirot, and Wansbrough, ("Ferrer"), Defendant Garretson Law Firm, LLC, ("Garretson"), and Defendant Eli Lilly and Company, ("Eli Lilly"), have each filed two motions to dismiss. (Docket Entry Nos. 25, 28, 30, 89, 93, 95.) Plaintiff has responded [FN1] to these motions to dismiss (Docket Entry Nos. 74, 75, 101) and has filed several discovery motions in this case (Docket Entry Nos. 22, 24, 27, 32,

51). Defendants Tennessee Department of Mental Health and Disabilities, ("TDMHD"), Western Mental Health Institute, ("WMHI"), and Middle Tennessee Mental Health Institute, ("MTMHI"), have filed one motion to dismiss (Docket Entry No. 90), to which Plaintiff has responded (Docket Entry No. 97). All pending motions have been referred to the undersigned Magistrate Judge for a report and recommendation. (Docket Entry No. 36.)

> FN1. Plaintiff filed one response styled "Motion to Resist Motions to Dismiss" and it has been docketed as a motion for disposition. (Docket Entry No. 74.) It should be denied as moot, and instead considered as Plaintiff's response to the multiple motions to dismiss.

For the reasons stated below, the undersigned Magistrate Judge recommends that Defendants Ferrer, Garretson, Eli Lilly, MTMHI, WMHI, and TDMHD's motions to dismiss be granted and that Plaintiff's discovery motions be denied as moot.

#### Statement of the Case and Facts

The pro se Plaintiff, proceeding in forma pauperis, filed Civil Action Number 3:10–0754 on August 9, 2010, against Defendants Ferrer, Garretson, and Eli Lilly for malpractice and negligence arising from a 2007 settlement between Eli Lilly and Plaintiff, among other class action plaintiffs. (Docket Entry Nos.1, 11.) Plaintiff was represented by Ferrer in that settlement and Garretson facilitated negotiation of the settlement. (Docket Entry No. 11, Compl. at 1–2.) Plaintiff alleges that Defendant Ferrer committed malpractice and was negligent in soliciting Plaintiff's signature for the class action settlement with Eli Lilly without consulting Plaintiff's psychiatrists, conservator, or a judge while he was severely mentally ill and housed at WMHI in Bolivar, Tennessee. (Compl. at

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3025894 (M.D.Tenn.)
**(Cite as: 2011 WL 3025894 (M.D.Tenn.))**

1–2.) Plaintiff also alleges that Garretson was negligent in failing to "identify the legal necessary steps for each signature," and that Eli Lilly was negligent and violated Plaintiff's 14th Amendment due process rights by failing to scrutinize Plaintiff's signature and mental state. (Compl. at 2.)

Defendants Ferrer, Garretson, and Eli Lilly contend that Plaintiff's claims against them are precluded by the doctrine of *res judicata* (Docket Entry Nos. 25, 28, 30) because Plaintiff previously filed a civil action against them that was dismissed with prejudice by this Court on August 10, 2010, involving the same 2007 settlement. *Jefferson v. Ferrer, Poirot and Wansbrough,* No. 3–09–0664, 2010 WL 3155991 (M.D.Tenn. Aug.10, 2010). In that case, Plaintiff had filed claims against the same three Defendants for violation of his civil rights under 42 U.S.C. § 1983. Chief Judge Campbell adopted the Report and Recommendation of the Magistrate Judge and ordered dismissal of Plaintiff's § 1983 claims against all three Defendants because Plaintiff "had not sufficiently plead any facts that raise the claim above a speculative level to show that the Defendants acted under color of state law." *Jefferson v. Ferrer, Poirot and Wansbrough,* No. 3–09–0664, 2010 WL 3155996, at *4 (M.D.Tenn. July 23, 2010) (report and recommendation); *see also Jefferson,* No. 3–09–0664, 2010 WL 3155991, at *1 (order).

**\*2** During the current case, and with several motions to dismiss and discovery motions pending, Plaintiff filed another lawsuit, Civil Action No. 3:11–0288, adding a claim of fraud against Defendants Ferrer, Eli Lilly, and Garretson; adding an attorney, Matt Daniel, an employee or agent of Ferrer, and a claim of fraud against him; and adding WMHI, MTMHI, and TDMHD as defendants accused of negligence and 14th Amendment due process violations. (Second Compl. at 1–2.) Plaintiff alleges that Matt Daniel was the attorney from Ferrer who actually sent, and advised Plaintiff to sign, the medical records release document for the settlement agreement, and

that he committed fraud in doing so. (Second Compl. at 2.) Plaintiff further alleges that WMHI was negligent in allowing the solicitation of Plaintiff for the records release, and that MTMHI was negligent in releasing Plaintiff's medical records to Ferrer. (Second Compl. at 1–2.) However, Defendant Daniel contends that Plaintiff's claim against him is precluded by the doctrine of *res judicata* as Defendant Ferrer was his employer and Plaintiff's previous suit against Defendant Ferrer was dismissed with prejudice. (Docket Entry No. 89.) Defendants WMHI, MTMHI, and TDMHD contend that this Court lacks jurisdiction over them as the Defendants are entitled to sovereign immunity under the Eleventh Amendment. (Docket Entry No. 90.)

Chief Judge Campbell [FN2], observing that Plaintiff's second action "presents common questions of law and fact" with the first pending action, consolidated these cases under Case Number 3:10–0754 to "prevent a multiplicity of litigation." (Docket Entry No. 78, Consolidation Order at 5.)

> FN2. This consolidated case has since been transferred to District Judge Kevin H. Sharp. (Docket Entry No. 98.)

**Legal Analysis**

A. *Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a claim's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Association of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir.2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must "state a claim to relief that is plausible on its face," not merely conceivable. *Twombly,* 550 U.S. at 570. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3025894 (M.D.Tenn.)
**(Cite as: 2011 WL 3025894 (M.D.Tenn.))**

liable for the misconduct alleged." *Ashcroft v. Iqbal,* ─── U.S. ───, ───, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences from its allegations in favor of the plaintiff. *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir.2008); *Lindsay v. Yates,* 498 F.3d 434, 438 (6th Cir.2007).

**\*3** Although pro se complaints are to be construed liberally by the court, *Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982), the court is required to dismiss a complaint brought by a plaintiff proceeding in forma pauperis "at any time the court determines" that the complaint is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).

B. *Defendants Ferrer, Garretson, Eli Lilly, and Daniel*

In this consolidated case, Defendants Ferrer, Garretson, Eli Lilly, and Daniel have asserted the defense of claim preclusion [FN3], encompassed by the doctrine of *res judicata,* in response to all claims asserted against them by Plaintiff. Because the initial case was filed in and judgment was rendered by this Court, federal *res judicata* principles apply. *Remus Joint Venture v. McAnally,* 116 F.3d 180, 184 n. 5 (6th Cir.1997) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982)). The doctrine of *res judicata* is well established and provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (citing *Comm'r v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948) and *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1877)); *see also Steeg v. City of Dearborn Heights,* 979 F.2d 851, 1992 WL 337502, at \*1

(6th Cir. Nov.13, 1992) (Table). A subsequent action is barred by the doctrine of *res judicata* when the following four elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 528 (6th Cir.2006); *Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir.1995). To satisfy the third and fourth elements, "there must be an identity of the causes of action[,] that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Wilson v. Strickland,* 333 Fed. Appx. 28, 2009 WL 1477248, at \*3 (6th Cir. May 28, 2009) (quoting *Westwood Chem. Co. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981)). Moreover, "[w]here the two causes of action arise from the 'same transaction, or series of transactions,' the plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Holder v. City of* Cleveland, 287 Fed. Appx. 468, 2008 WL 2787496, at \*2 (6th Cir. July 17, 2008) (quoting *Rawe,* 462 F.3d at 529). Finally, when *res judicata* applies, a complaint is properly dismissed under Rule 12(b)(6). *ABS Indus. v. Fifth Third Bank,* 333 Fed. Appx. 994, 2009 WL 1811915, at \*2–3 (6th Cir. June 25, 2009); *Hanger Prosthetics & Orthotics E., Inc., v. Henson,* 299 Fed. Appx. 547, 2008 WL 4791321, at \*9–10 (6th Cir. Nov.4, 2008); *Risser v. Metro. Gov't of Nashville & Davidson County,* 2009 WL 1974747, at \*2 n. 2 (M.D.Tenn. July 7, 2009).

> FN3. The distinct concepts of issue preclusion and claim preclusion are often referred to collectively as *res judicata.* Issue preclusion "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided" while claim preclusion "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The undersigned will refer to claim preclusion as *res judicata* for simplicity.

**\*4** Here, the first two elements of the four-part test are satisfied. First, the Court's dismissal [FN4] of Plaintiff's previous § 1983 complaint constituted a final decision on the merits. Jefferson, No. 3–09–0664, 2010 WL 3155991, at \*1. Second, Plaintiff sued the same three Defendants, Ferrer, Garretson, and Eli Lilly, in both his adjudicated action and his current consolidated action. *See Jefferson,* No. 3–09–0664, 2010 WL 3155991; (Docket Entry No. 1 [FN5]; Case No. 3:11–0288, Docket Entry No. 1.) In addition, Defendant Daniel was an employee or agent of Defendant Ferrer, a party to the previously adjudicated law suit, (Docket Entry No. 89, Def. Ferrer's Mot. to Dismiss at 9), and, therefore, a privy of Defendant Ferrer for *res judicata* purposes. *See ABS Indus.,* 2009 WL 1811915, at \*5 (recognizing that "it is well settled that a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship.").

> FN4. Plaintiff contends that the dismissal of the previous complaint was a dismissal without prejudice to refile. (Docket Entry No. 1, Compl. at 1.) However, an involuntary dismissal pursuant to Rule 12(b)(6) has the effect of an adjudication on the merits "unless the dismissal order states otherwise ..." Fed.R.Civ.P. 41(b) (2011); *see also Moitie,* 452 U.S. at 399 n. 3; *Angel v. Bullington,* 330 U.S. 183, 190, 67 S.Ct. 657, 91 L.Ed. 832 (1947).

> FN5. All citations to "Docket Entry" without a corresponding case number are citations to Case Number 3:10–0754, the current con-

solidated case.

Third, because both the previously adjudicated case and the current consolidated case arise from the "same transaction," the Zyprexa settlement and liability release from 2007 and Defendants' conduct related thereto with regards to Plaintiff's signature, Plaintiff should have brought his new claims [FN6] for malpractice, negligence, fraud, and 14th Amendment due process violations along with his § 1983 claim in the first action. *See Jefferson,* No. 3–09–0664, 2010 WL 3155991; (Docket Entry No. 1; Case No. 3:11–0288, Docket Entry No. 1); *see also Holder,* 2008 WL 2787496, at \*2. Fourth, comparing Plaintiff's previously adjudicated complaint with his second and third complaints in this consolidated case, there is clearly an identity of the causes of action. *See Jefferson,* No. 3–09–0664, 2010 WL 3155991; (Docket Entry No. 1; Case No. 3:11–0288, Docket Entry No. 1) Plaintiff alleges almost word-for-word the same facts in the complaints. Moreover, Plaintiff seeks to introduce the exact same evidence from the previously adjudicated case in this consolidated case in support of his new claims. (Docket Entry No. 27, Pl.'s Req. for Entry of Docs. From 3:09–0664.)

> FN6. It appears that Plaintiff also alleges a claim under "42 C.F.R. Part 2," which the undersigned has determined to be alleged violations of 42 U.S.C. § 290dd–2, as amended. (Case No. 3:11–0288, Docket Entry No. 1.) However, 42 U.S.C. § 290dd–2 does not create a private right of action and the claim cannot be sustained. *Ellison v. Cocke County,* 63 F.3d 467, 471 (6th Cir.1995); *see also Doe v. Broderick,* 225 F.3d 440, 449 (4th Cir.2000); *Chapa v. Adams,* 168 F.3d 1036, 1038 (7th Cir.1999).

Thus, the undersigned Magistrate Judge finds that *res judicata* bars Plaintiffs claims in this consolidated action against Defendants Ferrer, Garretson, Eli Lilly, and Daniel. Plaintiff's previous action was adjudicated

Not Reported in F.Supp.2d, 2011 WL 3025894 (M.D.Tenn.)
**(Cite as: 2011 WL 3025894 (M.D.Tenn.))**

on the merits and no appeal was filed. This consolidated action involves the same three defendants, or privies of the defendants, against whom Plaintiff filed the previous § 1983 action that was adjudicated on the merits. Furthermore, this consolidated action arises out of the same 2007 Zyprexa settlement, alleges the same facts as the previous action, and seeks to introduce the same evidence as the previous action. As such, the undersigned recommends that Defendants Ferrer and Daniel's motions to dismiss be granted (Docket Entry Nos. 25, 89), Defendant Garretson's motions to dismiss be granted (Docket Entry Nos. 28, 93), and Defendant Eli Lilly's motions to dismiss be granted (Docket Entry Nos. 30, 95).

### C. *Defendants WMHI, MTMHI, and TDMHD*

**\*5** Defendants WMHI, MTMHI, and TDMHD filed a motion to dismiss Plaintiff's negligence and Fourteenth Amendment due process claims [FN7] for lack of subject-matter jurisdiction under Rule 12(b)(1) [FN8] based upon Eleventh Amendment sovereign immunity, and, because the claims are time-barred by the applicable statute of limitations, under Rule 12(b)(6) for failure to state a claim. (Docket Entry No. 91.) Plaintiff filed a response concurring with Defendants' Eleventh Amendment defense and requesting dismissal as to Defendants WMHI, MTMHI, and TDMHD. (Docket Entry No. 97, Pl.'s Resp. in Concurrence at 1.) However, the undersigned will still consider Defendants' motion as Plaintiff is proceeding pro se.

> FN7. Although Plaintiff's complaint claims a violation of federal rights, "which necessarily must be presented under 42 U.S.C. § 1983," he does not invoke § 1983 in his complaint. *Hood v. City of* Boston, 891 F.Supp. 51, 54 (D.Mass.1995). However, failure to reference a specific federal law in the complaint is not fatal. *Majeske v. Bay City Bd. of Educ.,* 177 F.Supp.2d 666, 670 (E.D.Mich.2001); *Hood,* 891 F.Supp. at 54.

> FN8. The Sixth Circuit has left unsettled "whether [a court] must, or whether [a court] may, resolve a sovereignimmunity defense before addressing the merits." *Nair v. Oakland County Cmty. Mental Health Auth.,* 443 F.3d 469, 474 (6th Cir.2006). However, because Defendants have asserted sovereign immunity as a threshold defense by Rule 12(b)(1) motion, the undersigned must consider the defense first as a challenge to federal jurisdiction. *Id.* at 476 ("While the trend in this area seems to favor giving federal courts discretion over the issue, we need not decide the point because there is a narrower ground for decision, one that (we suspect) will account for most situations in which the issue arises. The most salient difference between sovereign immunity and subject-matter jurisdiction is that the former may be altered by the parties' litigation conduct while the latter may not be. And it is just one party's litigation conduct—the sovereign's—that may alter the existence of federal-court jurisdiction. If it is true that sovereign immunity may be waived and if it is true that just one party (the State) may waive the defense, the State would seem to be free to express whatever preference it wishes about whether the defense is a threshold issue or one that arises only if the sovereign would otherwise lose on the merits.")

It is well-established that a federal court cannot "entertain a suit brought by a citizen against his own State" and that such federal jurisdiction "against unconsenting states 'was not contemplated by the Constitution when establishing the judicial power of the United States,' " regardless of the form of relief sought. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890)); *see also* U.S. Const. amend. XI. However, there are some generally rec-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3025894 (M.D.Tenn.)
**(Cite as: 2011 WL 3025894 (M.D.Tenn.))**

ognized exceptions to the rule of sovereign immunity. *Barton v. Summers,* 293 F.3d 944, 948 (6th Cir.2002). First, a state may waive sovereign immunity and expressly consent to suit. *Id.* (citing *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)). Second, Congress may abrogate a state's immunity pursuant to its Fourteenth Amendment powers. *Id.* (citing *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Third, "the Eleventh Amendment does not bar a federal court from issuing an injunction ordering prospective relief against a state official in order to prevent future constitutional violations." *Id.* (citing *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

Here, none of these generally recognized exceptions applies to deprive Defendants of Eleventh Amendment sovereign immunity. First, the state of Tennessee has not expressly (or impliedly) waived immunity and consented to Plaintiff's suit. Defendants note that Tennessee has consented to suit only in the Tennessee Claims Commission for claims of negligence, not in federal courts. (Docket Entry No. 91, Defs.' Mem. in Supp. at 5); Tenn.Code Ann. § 9–8–307. Second, Congress has not abrogated Tennessee's sovereign immunity by providing a cause of action for civil rights violations. *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (noting that "neither logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act compels, or even warrants ... the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States."). Third, Plaintiff is seeking damages against Defendants, not injunctive or prospective relief, so the Eleventh Amendment would bar the claims against these defendants unless sovereign immunity is validly waived or abrogated. (Docket Entry No. 1, Compl. at 2; Case No. 3:11–0288, Docket Entry No. 1.)

**\*6** Because none of the above-mentioned exceptions applies in this case and Defendants WMHI, MTMHI, and TDMHD are state agencies or departments, their Eleventh Amendment sovereign immunity deprives this Court of jurisdiction to hear the claims against them. Therefore, the Defendants' motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction should be granted and the undersigned need not consider the merits of these Defendants' statute of limitations defense.

In summary, Defendants Ferrer, Garretson, Eli Lilly, and Daniel's motions to dismiss should be granted as Plaintiff's claims are precluded by the doctrine of *res judicata.* Defendants WMHI, MTMHI, and TDMHD's motion to dismiss for lack of subject-matter jurisdiction should also be granted as Defendants have proven, and Plaintiff does not contest, that they are entitled to sovereign immunity by the Eleventh Amendment. Accordingly, these consolidated cases should be dismissed with prejudice. Additionally, Plaintiff's discovery motions should be denied as moot (Docket Entry Nos. 22, 24, 27, 32), and Plaintiff's third motion for appointment of counsel (Docket Entry No. 51) should also be denied as moot.

### RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that Defendant Ferrer's motions to dismiss be **GRANTED,** that Defendant Garretson's motions to dismiss be **GRANTED,** that Defendant Eli Lilly's motions to dismiss be **GRANTED,** that Defendants MTMHI, WMHI, and the Department's motion to dismiss be **GRANTED,** and that Plaintiffs discovery motions and motion for appointment of counsel be **DENIED** as moot.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said ob-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3025894 (M.D.Tenn.)
**(Cite as: 2011 WL 3025894 (M.D.Tenn.))**

jections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).

M.D.Tenn.,2011.
Jefferson v. Ferrer, Poirot, and Wansbrough
Not Reported in F.Supp.2d, 2011 WL 3025894 (M.D.Tenn.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Eric JOHNSON, also known as Debah J. Smith,
Plaintiff,
v.
Ayisha ENU, Physician, Hudson Correctional Facili-
ty; Peter Bogarski; Reuteneaur, Jane Doe; McCoy,
John Doe; H.M. Miles; Joyce Duke; Wolff, John Doe;
Rother, Jane Doe; George, John Doe; Testo, John
Doe; Peter Behrle; M. Graziano; Michael Ambrosino;
Philip Heath; T. Mahar, Senior Correction Counselor,
Greene Correctional Facility; T. Gaines; Caulfield,
John Doe; John Doe # 1; John Doe # 2; Karen Meicht,
Nurse, Hudson Correctional Facility; Winnie, Lieu-
tenant, Hudson Correctional Facility; and Coffey,
John Doe, Defendants.[FN1]

> FN1. Ankesh Nigam and John Rodgers were
> also named as defendants in the amended
> complaint. Dkt. No. 64. On September 18,
> 2010, their motion for summary judgment
> was granted. Dkt. No. 115. Further, John Doe
> George was named as a defendant in the
> original complaint (Dkt. No. 1) but he was
> not named as a defendant in the amended
> complaint (Dkt. No. 64). The amended
> complaint also fails to allege that George
> engaged in any of the alleged unconstitu-
> tional conduct. Accordingly, the Clerk is di-
> rected to terminate him as a party to this ac-
> tion.

No. 08–CV–158 (FJS/DRH).
July 13, 2011.

Eric Johnson, c/o Debah J. Smith, Brooklyn, NY, pro
se.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, Dean J. Higgins, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for De-
fendants.

**REPORT–RECOMMENDATION AND OR-
DER[FN2]**

> FN2. This matter was referred to the under-
> signed for report and recommendation pur-
> suant to 28 U.S.C. § 636(b) and
> N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

**\*1** Plaintiff *pro se* Eric Johnson ("Johnson"),
formerly an inmate in the custody of the New York
State Department of Correctional Services ("DOCS"),
brings this action pursuant to 42 U.S.C. §§ 1983 and
1985 alleging that defendants, twenty-one DOCS
employees, violated his constitutional rights. Am.
Compl. (Dkt. No. 64). Presently pending is defend-
ants' motion for summary judgment pursuant to
Fed.R.Civ.P. 56. Dkt. No. 119. Johnson has not op-
posed this motion. For the following reasons, it is
recommended that defendants' motion be granted in its
entirety.

**I. Failure to Respond**

Johnson did not oppose defendants' motion.
"Summary judgment should not be entered by default
against a pro se plaintiff who has not been given any
notice that failure to respond will be deemed a de-
fault." *Champion v. Artuz,* 76 F.3d 483, 486 (2d
Cir.1996). Defendants and the Court provided such
notice here. Dkt. Nos. 119–14, 120. Despite this no-
tice, Johnson failed to respond. "The fact that there has

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically ." *Champion,* 76 F.3d at 436. Even in the absence of a response, a defendant is entitled to summary judgment only if the material facts demonstrate his or her entitlement to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c).

Because Johnson has not responded to raise any question of material fact, the facts-but not the legal conclusions-set forth in defendants' Rule 7.1 Statement of Material Facts (Dkt. No. 119–1) [hereinafter "Defs.' 7.1 Statement"] are accepted as true. *See, e.g., Onanuga v. Pfizer, Inc.,* 369 F.Supp.2d 491, 493 n. 1 (S.D.N .Y.2005) (citing *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 72 (2d Cir.2001); *Lopez v. Reynolds,* 998 F.Supp. 252, 256 (W.D .N.Y.1997); *see also* N.D.N.Y.L.R. 7.1(a)(3) (*"The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."* ) (emphasis in original).

Finally, as to those facts not contained in defendants' 7.1 statement, the Court will assume for purposes of this motion that plaintiff's version of those facts is true, as plaintiff is entitled to the benefit of all inferences at this stage. *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998). To be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or verified complaint) must, among other things, be based on "personal knowledge." Fed.R.Civ.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). While the amended complaint is not notarized as was the original complaint (Dkt. No. 1), the amended complaint contains a statement above Johnson's signature stating, "I declare under penalty that the foregoing is true and correct." Am. Compl. at 31; Compl. at 21. Both verifications suffice to require that these documents be considered in opposition to

the pending motion as long as the other requirements of Rule 56(c)(4) are satisfied, including personal knowledge, admissibility, and competency. *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

## II. Background

**\*2** In February 2005, while housed at Ulster Correctional Facility, Johnson was diagnosed with Hepatitis B. Defs.' 7.1. Statement ¶ 18. He was transferred to Hudson Correctional Facility ("Hudson") on March 15, 2006. *Id.* ¶ 19. Dr. Ayisha Enu, a defendant herein, reviewed Johnson's medical records upon his arrival at Hudson. *Id.* ¶ 22. On March 22, Hudson medical staff performed additional blood tests. *Id.* ¶ 24. Five days later, on March 27, Johnson informed Dr. Enu of his hepatitis diagnosis. *Id.* ¶ 23.

Dr. Enu received the results from Johnson's blood tests on September 1. *Id.* ¶ 25. The tests revealed that Johnson was HbeAg negative and anti-HBe positive, indicating that he had a variant of Hepatitis B and likely had it "for a very long time.". *Id.* ¶¶ 26–27. Dr. Enu then ordered liver function tests and counseled Johnson on the disease and treatment options. *Id.* ¶ 28. Johnson's liver function and Hepatitis B viral load tests were drawn on August 30. *Id.* ¶ 29. Those tests revealed elevated liver enzyme levels as compared to tests conducted earlier in the year. *Id.* ¶ 30. Dr. Enu and Johnson discussed the results on September 5. *Id.* ¶ 31. Johnson stated that he did not believe the results because his liver function tests were always normal. *Id.* Dr. Enu then ordered a repeat of the liver function and Hepatitis B viral load tests. *Id.* ¶ 32.

On September 11, 2006, the results from the Hepatitis viral load drawn on August 30, 2006, "revealed a very high [viral load] count." Defs.' 7.1 Statement ¶ 33. Four days later, on September 15, Dr. Enu made arrangements for Johnson to see Dr. Rodgers, a gastroenterology specialist at Albany Medical Center Hospital, to discuss Hepatitis treatment. *Id.* ¶ 34. Samples for liver function and Hepati-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

tis B tests were drawn again on September 20, 2006. *Id.* ¶ 35. Those tests, once again, revealed elevated enzyme levels. *Id.* Dr. Enu saw Johnson again on October 26. *Id.* ¶ 36. Dr. Enu ordered Hepsera for Johnson, and they discussed the blood and liver function testing regiment that Johnson would undergo once he started treatment. *Id.*

After starting treatment on October 26, Johnson researched Hepsera and learned of the complications that could develop if he were to ever stop taking the drug. Am. Compl. at 9; *see also* Defs.' Ex. B (Dkt. No. 119–4) at 263. Johnson returned to medical staff on November 3, 2006, because he had questions about the medication. Defs.' 7.1 Statement ¶ 37. Dr. Smith, who was covering for Dr. Enu, explained to Johnson the need for follow up and compliance because Hepatitis B is a chronic disease and that his liver function tests showed abnormal enzyme levels. *Id.* Johnson returned to the medical department on November 16 because he was concerned about Hepsera's side effects. Am. Compl. at 9; *see also* Defs.' Ex. B at 258. Nurse Peter Bogarski, a defendant herein, allegedly ignored Johnson's questions and asked that he be removed from the examination room. *Id.*

**\*3** Johnson requested permission from his instructor to file a grievance after returning to his work assignment. Am. Compl. at 9. He went to the library to file a grievance directly with Grievance Officer T. Testo, a defendant herein, but Testo was not present. *Id.* at 9–10. Johnson took a grievance form and attempted to return to his assignment but he was stopped by Correction Officer Rother, also a defendant herein. *Id.* at 10. Rother conducted a pat and frisk of Johnson and told him that he could not file a grievance in there and to return to his assignment. *Id.* Correction Sergeant John Doe Wolfe, FN3 another defendant herein, escorted Johnson back to his assignment. *Id.* Wolfe then questioned Instructor Deer about Johnson's "movement." *Id.* Deer stated that he assumed that Johnson was returning to the medical unit. *Id.* Johnson received a misbehavior report. *Id.*

FN3. Defendant Wolfe's name is incorrectly spelled in the amended complaint. *See* Dkt. No. 64. The correct spelling is Wolfe. *See* Defs.' Answer to Am. Compl. (Dkt. No. 79) ¶ 2.

A CT scan was performed on Johnson at Albany Medical Center Hospital on November 25, 2006. Defs.' 7.1 Statement ¶ 38. On November 28, Dr. Enu learned that the scan revealed a mass on the tail of Johnson's pancreas. *Id.* ¶ 39. Johnson had an MRI on December 18. *Id.* ¶ 40. Consistent with the results of the earlier CT scan, the MRI also showed a mass on the tail of Johnson's pancreas. *Id.* ¶ 44. The differential diagnosis of the MRI "include[d] islet cell tumor, metatastic disease, or carcinoid." *Id.* ¶ 45; *see also* Defs.' Ex. B at 150.

Nurse Karen Meicht, a defendant herein, examined Johnson on December 13, 2006, after Johnson complained of stomach problems. Am. Compl. at 11; *see also* Defs.' Ex. B at 256. Johnson asked when he would see Dr. Rodgers again. Am. Compl. at 11. Meicht told Johnson that he would have to wait until the test results were ready for review. *Id.; see also* Defs.' Ex. B at 256. Johnson then received some stomach fiber and left the medical department. Am. Compl. at 11.

Dr. Enu referred Johnson to Dr. Nigam, a surgeon at Albany Medical College, for a consultation. Defs.' 7.1 Statement ¶ 46. Dr. Nigam's first examined Johnson on January 5, 2007, and Johnson agreed to remove the mass on the pancreas surgically. Nigam Aff. (Dkt. No. 94–2) ¶¶ 9–10. Four days later, Johnson claims to have written a letter to Bogarski, "requesting further clarity on the proposed surgery." Am. Compl. at 9. On January 30, 2007, the day of the scheduled surgery, Johnson expressed his reluctance to proceed with the surgery and wanted more information on other options, including waiting or a biopsy. Nigam

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

Aff. ¶ 11. Dr. Nigam warned Johnson that there was a "small risk" that the mass could develop into cancer by waiting. *Id.* Johnson decided not to have the surgery, and on April 5, 2007, Dr. Nigam wrote an order for a biopsy of the pancreas with Dr. Sood. *Id.* ¶ 12; Defs.' 7.1 Statement ¶ 49.

Johnson met with defendants Enu, Bogarski, Meicht and Nurse Jane Doe Reuteneaur FN4 on February 2, 2007, to discuss follow-up surgical treatment. Am. Compl. at 14; *see also* Defs.' Ex. B at 88. Johnson claims that Enu acted as if the surgery were an elective procedure and focused on the mass on the chest instead of the mass on the pancreas. Am. Compl. at 14. Reuteneaur allegedly told Johnson that there was nothing that medical staff could do because Johnson refused the surgery. *Id.* Following this meeting, Hudson Deputy Superintendent for Security H.M. Miles, a defendant herein, allegedly removed Johnson from the outside community work crew, "implying" that Johnson had caused a disturbance. Am. Compl. at 14.

> FN4. Both the original complaint and the amended complaint name "Jane Doe Reuteneaur" as a defendant. Johnson believes that this defendant is female. *See* Am. Compl. at 5, 18. Terry Reuteneaur accepted service of the original complaint. *See* Dkt. No. 49. In support of the present motion, Terry Reuteneaur submitted an affidavit stating that he is male and that the allegations made against Jane Doe Reuteneaur do not refer to him. Reuteneaur Decl. (Dkt. No. 119–12) ¶¶ 4–5. Even if the pleadings were served on the incorrect person, no further identification or service upon Jane Doe Reuteneaur is necessary because doing so would be futile as Johnson has failed to state a claim against Jane Doe Reuteneaur. *See* discussion infra Point III(D)(4).

**\*4** On March 1, 2007, Johnson was brought to the medical building after complaining of a "spinning headache." Defs.' 7.1 Statement ¶ 61; Am. Compl. at 15. Dr. Enu recommended that Johnson be evaluated at Columbia Memorial Hospital because the Hudson emergency medical staff leaves at 10:00PM, and Johnson's "new symptom" might require emergency medical staff. Defs.' 7.1 Statement ¶¶ 62–64. Johnson refused to go to the private hospital. *Id.* ¶ 66. Johnson was then sent to Coxsackie Correctional Facility's Regional Medical Unit ("Coxsackie RMU") for observation. *Id.* ¶ 68. Before returning to Hudson on the next day, Coxsackie RMU medical staff allegedly told Johnson that there was no reason for the transfer. Am. Compl. at 16.

Upon Johnson's return to Hudson on March 2, Meicht issued Johnson a misbehavior report, accusing Johnson of lying, providing false information, and failing to report an illness. Am. Compl. at 16; *see also* Defs.' Ex. D (Dkt. No. 119–6) at 4. Correction Lieutenant Winnie, a defendant herein, found Johnson guilty. Defs.' Ex. D at 1. Johnson received thirty-days in keeplock, and he had recreation, package, commissary, and phone privileges suspended for fifteen days. *Id.*

Johnson learned on March 15, 2007, that Dr. Enu requested a change in Johnson's medical level so that he could be transferred. *Id.* at 17. Johnson claims that the real reason for the transfer was because he was "argumentative and problematic." *Id.* Johnson also wrote to Bogarski on March 15 to request a "reevaluation of the canceled pancreatic surgery." Am. Compl. at 17. Johnson did not receive a response. *Id.*

Johnson was transferred to Greene Correctional Facility ("Greene") on March 21, 2007. Defs.' 7.1 Statement ¶ 52. Upon arriving at Greene, Johnson wrote to Greene Superintendent Peter Behrle, a defendant herein, requesting information on the transfer. Am. Compl. at 18. Greene Deputy Superintendent for Security M. Graziona, also a defendant herein, responded on April 2, 2007, and told Johnson that he

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

was transferred for unspecified medical reasons and that he would return to Hudson once his medical needs were met. *Id.* Also on April 2, Johnson spoke with Physician John Doe Caulfield, another defendant herein, about the reason for the transfer and biopsy. *Id.* Johnson claims that Caulfield "made it appear as if [Johnson] were requesting the needle biopsy as an elective procedure," and that it took Caulfield two months to order the biopsy despite the "urgency of [the] condition." *Id.*

Graziano allegedly wrote to Johnson on June 17, 2007, to inform Johnson that his medical condition was changed, permitting him to transfer out of Greene. Am. Compl. at 19. Three days later, Johnson claims to have received a letter from Correction Counselor T. Gaines, a defendant herein, stating that Johnson's transfer was awaiting approval from the central office in Albany. *Id.*

**\*5** On June 6, 2007, while at Greene and under the care of Dr. Sood, Johnson underwent an upper endoscopy ultrasound in an attempt to biopsy the pancreatic mass. Defs.' 7.1 Statement ¶¶ 50–51. The pancreatic mass, however, could not be visualized. *Id.* ¶ 51. On September 7, 2007, under the care of Dr. Doreen Smith at Greene, Johnson had a CT scan. *Id.* ¶ 53. This scan showed a stable pancreatic tail mass that had been stable for at least ten months. *Id.* ¶ 53. Johnson also received a letter on September 7 from Behrle, stating that the transfer back to Hudson was now permissible. Am. Compl. at 19. But two weeks later, on September 21, Johnson received a letter from Gaines, stating that the central office denied the transfer as Greene was the proper facility because of Johnson's medical condition. *Id.* at 20. Greene Deputy Superintendent Michael Ambrosino, also a defendant herein, allegedly sent Johnson a letter on September 24 to inform him that his "medical level" was changed due to a hold placed on Johnson by the parole board on March 15, 2007. *Id.*

While at Greene, Johnson filed two grievances on

September 22, 2007. Am. Compl. at 23. One grievance was about the failure to honor his request to speak with Caulfield. *Id.* The other was related to the circumstances of Johnson's transfer to Greene in March 2007. *Id.* Johnson was allegedly told that transfers were not grievable and that the grievance would not be filed. *Id.* Johnson alleges that it was Defendants John Doe # 1 [FN5] and John Doe # 2 who refused to file these grievances. *Id.* On October 3, 2007, Senior Correction Counselor Tim Mahar, another defendant herein, wrote to Johnson to inform him that an "unscheduled transfer [has] been submitted." Am. Compl. at 20. Johnson received a letter on October 16 from Greene Deputy Superintendent for Programs Philip Heath, also a defendant herein, stating that Johnson was "to remain at Greene." *Id.*

> FN5. Rule 4(m) of the Federal Rules of Civil Procedure requires that service of process be effectuated within 120 days of the date of the filing of the complaint. *See also* N.D.N.Y.L.R. 4.1(b) (service of process must be made within sixty days of the filing of the complaint). Because these defendants have not been identified by Johnson or served with process, it is recommended that the complaint be dismissed without prejudice as to John Doe # 1 and John Doe # 2. No further identification or service upon John Doe # 1 or John Doe # 2 are necessary because doing so would be futile as Johnson has failed to state a claim against these defendants. *See* discussion *infra* Point III(F).

Johnson returned to Hudson on February 2, 2008. Defs.' 7.1 Statement ¶ 56. Dr. Enu continued to work with Johnson in conjunction with Dr. Nigam and Dr. Rodgers.[FN6] *Id.* ¶ 52. Dr. Enu saw Johnson on March 28 and April 9, 2008, to discuss the elevated tumor markers. *Id.* ¶ 57. A CT of the liver was scheduled to be performed on May 12, 2008, because of an elevated tumor marker located next to the Hepatic Vein. *Id.* ¶ 58. Johnson, however, refused the procedure until he

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

had an opportunity to discuss it with his family. *Id.*

> FN6. A detailed discussion of Dr. Nigam's and Dr. Rodgers's involvement in Johnson's medical treatment can be found in the report and recommendation that recommended their dismissal. *See* Dkt. No. 114.

On April 28, 2008, Johnson was transferred to Coxsackie RMU for a medical trip. Defs.' 7.1 Statement ¶ 5; Am. Compl. at 22. Medical Transport Officer John Doe Coffey, a defendant herein, secured Johnson into a transport vehicle with handcuffs, chains, and leg irons. Defs.' 7.1 Statement ¶ 5. Johnson alleges that he was fondled in the "groin area" by Coffey during this process. Am. Compl. at 22. Johnson claims that this was the third such incident. *Id.* Johnson and Correction Sergeant Wolfe discussed this incident several days later, and Wolfe said that he would conduct an investigation. *Id.* Johnson was scheduled for a medical trip on May 12, 2008. *Id.* He requested that Coffey not be the transport officer for that trip. *Id.* On May 12, however, Coffey was the transport officer, but Wolfe supervised the process. *Id.* Johnson complained that the shackles around his ankles were too tight but Wolfe said that Johnson had enough room. *Id.*

**\*6** Dr. Enu had another appointment to discuss the liver biopsy with Johnson on July 30, 2008. *Id.* at ¶ 59. Johnson refused the procedure. *Id.* at 55. This appointment was the last time that Dr. Enu examined Johnson. *Id.* ¶ 54. Johnson was transferred to Greene on August 15, 2008. *Id.* ¶ 60.

### III. Discussion
### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party has the burden to show the absence of disputed material facts by

informing the court of portions of pleadings, depositions, and affidavits that support the motion. *Id.; see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v.. Zenith Radio Corp.,* 475 U.S. 574, 585–86. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Id.* at 586. It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

When, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-moving party special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude,"; that a *pro se* litigant's submissions must be construed "liberally,"; and that such submission must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the *pro se* litigant's allegations, or arguments that the submissions themselves do not "suggest,"; that we should not "excuse frivolous or vexatious filings by *pro se* litigants," and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law."

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

*Id.* (internal citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.") (citations omitted).

### B. Eleventh Amendment Immunity

**\*7** The Eleventh Amendment prohibits suits against a state in federal court unless the state consents or waives its immunity. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984). A suit against a state official in his or her official capacity is a suit against the entity that employs the official. *Mathie v. Fries,* 121 F.3d 808, 818 (2d Cir.1997). The State has not consented to suit or waived its immunity here. § 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Daisernia v. New York,* 582 F.Supp. 792, 796 (S.D.N.Y.1984). Thus, a suit that seeks monetary damages from an official in his or her official capacity is barred even though asserted against the individual. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).

Johnson has named defendants in their official capacities as DOCS employees. *See* Am. Compl. at 2–6. Although defendants have not moved to dismiss on Eleventh Amendment grounds, it is recommended that the Court *sua sponte* dismiss any claims against defendants for money damages in their official capacities. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

### C. Personal Involvement

Personal involvement is an essential prerequisite for § 1983 liability. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). A section 1983 defendant, however, cannot be liable "merely because he held a supervisory position of authority." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Supervisory personnel may be considered "personally involved" only if the defendant:

(1) directly participated in the alleged constitutional violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that a violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).[FN7]

> FN7. The Supreme Court's decision in *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009), casts doubt in the continued viability of some of the categories set forth in *Colon. See Sash v. United States,* 674 F.Supp.2d 531 (S.D.N.Y.2009). Here, the Court will assume *arguendo* that all of the *Colon* categories apply.

#### 1. McCoy, Duke, and Testo

Besides naming McCoy, Duke, and Testo in the amended complaint, Johnson has made no allegations that those defendants engaged in the alleged unconstitutional conduct. Accordingly, those defendants should be granted summary judgment.

#### 2. Behrle, Graziano, Ambrosino, Heath, Mahar, and Gaines

Behrle, Graziano, Ambrosino, Heath, Mahar, and Gaines either received letters from Johnson or responded to Johnson when he inquired as to why he was transferred to Greene from Hudson. *Id.* at 18–20. Without more, Johnson has not alleged the personal involvement of these defendants in any alleged unconstitutional conduct. Nor does Johnson allege that he notified these defendants of the alleged unconstitutional conduct. He merely inquired into reasons for the transfer. *See id.*

Further, even if Johnson alleged unconstitutional

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

conduct in these letters, the "mere receipt of letters from an inmate by a [supervisory official] regarding [unconstitutional conduct] is insufficient to constitute personal liability." *Gonzales v. Wright,* No. 9:06–CV–1424 (JMH), 2010 U.S. Dist. LEXIS 15953, at *28, 2010 WL 681323, at *10 (N.D.N.Y. Feb. 22, 2010) (citations omitted); *see also Booker v. Doe,* No. 9:06–CV–73 (GLS), 2008 U.S. Dist. LEXIS 76413, at *22, 2008 WL 4527601, at *7 (N.D.N.Y. Sept. 30, 2008) ("It is now well-settled that the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement.").

**\*8** Accordingly, these defendants should be granted summary judgment.

### D. Pendent State Law Claims

To the extent that Johnson's claims may be construed as pendent state law claims alleging lack of informed consent prior to treatment, such claims must fail. Federal courts have supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. § 1367. It is recommended, herein, however, that defendants be granted summary judgment on Johnson's federal claims against them on which rests federal jurisdiction over the pendent state law claims. Johnson asserts no other basis for the Court's jurisdiction over these claims and, therefore, the Court should decline to exercise supplemental jurisdiction over Johnson's state law claims if the recommendations are accepted. *See* 28 U.S.C. § 1367(c)(3). Such causes of action should be dismissed without prejudice.

Moreover, even if the state law claims are addressed, they still fail. In order to state an actionable claim for failure to provide informed consent:

plaintiff must prove (1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury.

*Foote v. Rajadhyax,* 702 N.Y.S.2d 153, 153 (N.Y.2000) (citations omitted). In this case, there is nothing in the record to show that the medical treatment that any of the defendants provided were the proximate cause of Johnson's injuries. In fact, there is nothing to show that Johnson was injured at all.

### E. Deliberate Medical Indifference

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *Id.* "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

" 'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright,* 315 F.3d158, 162–63 (2d Cir.2003) (citing *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. *Smith,* 316 F.3d at 185.

**\*9** Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance,* 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. *Chance,* 143 F.3d at 703. As such, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists ... are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

In this case, defendants do not appear to challenge the fact that Hepatitis B and its potential complications or the resulting malignancies in Johnson's pancreas were serious medical needs. Rather, defendants contend that they were not deliberately indifferent.

### 1. Dr. Enu

Johnson contends that Dr. Enu was not receptive enough to a biopsy when the liver tumor was first discovered in 2006, refused to follow the advice of specialists who recommend a biopsy, and failed to refer Johnson to an oncologist. Am. Compl. at 25–26.

First, mere disagreements on treatment between a prison inmate and his doctor do not rise to the level of a constitutional violation. *Sonds,* 151 F.Supp.2d at 312. Likewise, even if other doctors, as Johnson argues, disagreed with Dr. Enu's prescribed treatment, Dr. Enu is entitled to his own medical judgment and the mere fact that he disagreed with other medical professionals is insufficient to show deliberate indifference even if Dr. Enu's judgment was misguided or negligent. *See Ortiz v. Makram,* No. 96 Civ. 3285, 2000 WL 1876667, at \*10 (S.D.N.Y. Dec. 21, 2000).

Also, Johnson's refusal of the prescribed treatment further negates allegations of deliberate indifference. *See Gillard v. Rovelli,* No. 9:09–CV–0860 (NAM/GHL), 2010 WL 4905240, at \*10 (N.D.N.Y. Sept. 29, 2010) (Lowe, M.J.) (citing *Rivera v. Goord,* 253 F.Supp.2d 735, 756 (S.D.N.Y.2003)). On May 14, 2008, Johnson refused a CT of his liver to evaluate whether a mass had become cancerous or spread. Defs.' Ex. B at 36–38. He refused the CT scan once again on June 19, 2008. *Id.* at 32–34. Finally, on July 30, 2008, Johnson refused a liver biopsy. *Id.* at 29. While Johnson might have refused the prescribed treatment because he disagreed with them, prisoners are not afforded the medical treatment of their choice. *Chance,* 143 F.3d at 703.

Finally, a review of Johnson's medical records fails to reveal any indication or suggestion that Dr. Enu was deliberately indifferent to Johnson's serious medical needs. Upon Johnson's transfer to Hudson on March 15, 2006, Dr. Enu reviewed Johnson's medical records. Defs.' Ex. B at 273. Dr. Enu conducted a physical examination of Johnson and learned of his Hepatitis B diagnosis approximately a week and a half later on March 27. *Id.* at 272. Dr. Enu ordered blood and liver function tests to evaluate Johnson's condition and repeated the tests after Johnson refused to believe the results. Defs.' Ex. B at 269–70. Dr. Enu also referred Johnson to outside specialists or other medical personnel when Hudson's facilities would be unable to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
(Cite as: 2011 WL 3439179 (N.D.N.Y.))

provide assistance. *Id.* at 164 (consultation notes of Dr. Nigam reference referral from Dr. Enu), 176–80 (transfer to Coxsackie RMU because Johnson needed emergency care), 268 (ambulatory health record noting referral to a gastroenterology specialist). There is no indication that Dr. Enu was deliberately indifferent to Johnson's medical needs during the eighteen-month period that Johnson was under Dr. Enu's care.

**\*10** Accordingly, defendants' motion as to Dr. Enu should be granted on this ground.

### 2. Dr. Caulfield

Johnson asserts a delay in medical treatment claim against Dr. Caulfield. Am. Compl. at 18. A "delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Thomas v. Nassau County Corr. Ctr,* 288 F.Supp.2d 333, 339 (E.D.N.Y.2003) (internal quotation marks omitted) (citing *Chance,* 143 F.3d at 703). "The Second Circuit has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a life threatening and fast-degenerating condition for three days, or delayed major surgery for over two years." *Thomas,* 288 F.Supp.2d at 339 (internal quotation marks omitted) (citing *Espinal v. Coughlin,* No. 98 Civ. 2579, 2002 U.S. Dist. LEXIS 20, 2002 WL 10450, at \*3 (S.D.N.Y. Jan. 3, 2002)). Even if a prisoner is able to establish delay, he must also show that his condition became worse or deteriorated as a result of the delay. *Thomas,* 288 F.Supp.2d at 339.

The record is devoid of any facts demonstrating that Dr. Caulfield delayed the procedure as a form of punishment, ignored a life threatening and fast-degenerating condition, or delayed major surgery. Johnson accuses Dr. Caulfield of waiting two months before ordering a needle biopsy. Am. Compl. at 18. Johnson claims that Dr. Caulfield acted as if the procedure were elective, and he appeared to have no knowledge of Dr. Nigam's "order for a needle biopsy."

*Id.* Johnson also believed that the procedure was required immediately because of the "urgency of [his] condition." *Id.* There is no indication, however, that the needle biopsy was an urgent procedure. Dr. Nigam merely stated that delaying pancreatectomy and spleenectomy in favor of a biopsy would mean a "small risk of cancer." Defs.' Ex. A (Dkt. No. 119–3) at 38. Moreover, Johnson has failed to proffer any evidence that his condition deteriorated or became worse as a result of the delay.

Accordingly, Dr. Caulfield should be granted summary judgment on to this ground.

### 3. Bogarski

Bogarski, a nurse administrator, is accused of ignoring Johnson's questions and concerns about Hepsera, and removing Johnson from the examination room for no reason on November 17, 2006. Am. Compl. at 9. An ambulatory health record signed by Bogarski and dated November 17, 2006, indicates that Johnson became "verbally upset" and "uncooperative" as an "inquisition into [Johnson's] health history [was] attempted." Defs.' Ex. B at 258. Johnson "was asked to leave the medical office," and security was notified. *Id.* 6.

Johnson also accuses Bogarski of ignoring two letters where Johnson inquired about the need for pancreatic surgery and a reevaluation for the canceled pancreatic surgery. Am. Compl. at 9, 17. On January 9, 2007, four days after Johnson's surgical consultation with Dr. Nigam, Johnson sent a letter to Bogarski, "requesting further clarity on the proposed surgery." *Id.* at 9. Then on March 17, 2007, approximately a month and a half after the surgery was canceled, Johnson wrote to Bogarski to request a reevaluation of the canceled surgery. *Id.* at 17. It does not appear that Bogarski responded to either of these letters. *See id* .

**\*11** These allegations fail to establish deliberate indifference on the part of Bogarski. There is no in-

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
(Cite as: 2011 WL 3439179 (N.D.N.Y.))

dication that Johnson failed to receive medical care and treatment for his conditions after Bogarski asked him to leave the medical department on November 17, 2006, or after Bogarski allegedly ignored Johnson's letters. Johnson continued to receive medical evaluations and monitoring of his liver conditions by medical staff. *See generally* Defs.' Ex. B.

Accordingly, defendants should be granted summary judgment on this ground.

### 4. Reuteneaur

Reuteneaur, a nurse, was allegedly present at a February 2, 2007, medical appointment that Johnson had with Dr. Enu. Am. Compl. at 14; see also Defs.' Ex. B at 88 (ambulatory health record signed by Dr. Enu showing a medical consult on February 2, 2007). After Dr. Enu told Johnson that he would receive a biopsy when the need for one arose, Johnson asked what his treatment would be should his condition become serious. Am. Compl. at 14. Reuteneaur allegedly told Johnson that "there would be nothing [that medical staff] could do" because Johnson refused the surgery.

While Johnson may contend that this amounted to deliberate indifference, Johnson has proffered no facts to support this conclusory statement. Moreover, a review of the record further belies a deliberate indifference claim as Johnson continued to receive medical evaluations to monitor the progression of his disorders. *See generally* Defs.' Ex. B. Accordingly, summary judgment as to Reuteneaur should be granted.

### 5. Meicht

Nurse Meicht examined Johnson on December 13, 2006, because Johnson was experiencing stomach discomfort. Am. Compl. at 11; Defs .' Ex. B at 256. Johnson received stomach fiber before leaving. Am. Compl. at 11. Meicht also made an appointment for Johnson to see Dr. Enu. Defs.' Ex. B at 256. Without more, there is nothing to show that Meicht acted with

deliberate indifference to Johnson's medical needs. Accordingly, Meicht should be granted summary judgment on this ground.

### F. Misbehavior Report and Keeplock Confinement

The amended complaint alleges that Meicht issued a false misbehavior report against Johnson on March 2, 2007. Am. Compl. at 16. Johnson possessed no constitutional right to be free "from falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," but he is still entitled "not to be deprived of a protected liberty interest without due process of law." *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). Thus, a fair hearing would cure any due process violations resulting from false accusations. *Grillo v. Coughlin,* 31 F.3d 53, 56 (2d Cir.1994); *Livingston v. Kelly,* 561 F.Supp.2d 329, 331 (W.D.N.Y.2008) ("As the Second Circuit noted ..., an inmate's allegation that he has been found guilty of false disciplinary charges may support a constitutional claim if he also alleges that he was denied the minimal procedural due process protections ....").

**\*12** To prevail on a procedural due process claim under section 1983, a plaintiff must show that he possessed a protected property or liberty interest, and that he was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998). Also, due process generally requires that a state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir.2003).

To establish a protected liberty interest, a prisoner must satisfy the standard set forth in *Sandin v. Conner,* 515 U.S. 472, 483–84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. *Id.* at 484; *Jenkins v. Haubert,* 179 F .3d 19, 28 (2d Cir.1999); *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

Cir.1996). The fact that an inmate has been disciplined with confinement in keeplock [FN8] or a special housing unit [FN9] alone is insufficient to establish an atypical and significant deprivation.

> FN8. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6.

> FN9. SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population ...." N .Y. Comp.Codes R. & Regs. tit. 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

Hearing Officer Winnie sentenced Johnson to thirty-days in keeplock confinement. Defs.' Ex. D at 1. Winnie also suspended Johnson's recreation, package, commissary, and phone privileges for fifteen days. *Id.* District courts have noted that "decisions in the Second Circuit are unanimous that keeplock ... of 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin." Auleta v. LaFrance,* 233 F.Supp.2d 396, 398 (N.D.N.Y.2010) (citing *Williams v. Keane,* No. Civ. 95–0379(AJP)(JGK), 1997 WL 527677, at *6–8 (S.D.N.Y. Aug. 25, 1997) (Peck, M.J.) (citing cases)). Moreover, "the loss of phone, telepackage, and commissary privileges does not give rise to a protected liberty interest under New York law." *Smart v. Goord,* 441 F.Supp.2d 631, 640 (S.D.N.Y.2006) (citing *Husbands v. McClellan,* 990 F.Supp. 214, 217 (W.D.N.Y.1998), citing in turn *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996)). Thus, Johnson did not have a protected liberty interest.

Even if Johnson had a protected liberty interest, he received a fair and impartial hearing. While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural due process. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Prisoners are "entitled to advance written notice ...; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (citations omitted). Due process requires written notice twenty-four hours prior to the commencement of a formal disciplinary hearing in order "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are .... " *Wolff,* 418 U.S. at 564 (citations omitted). "The effect of the notice should be to compel the charging officer to be sufficiently specific as to the misconduct ... charged to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges ...." *Taylor v. Rodriguez,* 238 F.3d 188, 192–93 (2d Cir.2001) (citations omitted). Such notice guarantees a meaningful hearing whereupon a prisoner can properly defend himself against the pending charges. *Id.* at 193.

**\*13** Here, the misbehavior report was delivered on March 2, 2007, and the hearing was held on March 8, 2006, giving Johnson six days to prepare a defense. Defs.' Ex. D at 1. Johnson also had the opportunity to present a defense, and he declined to call any witnesses. *Id.* at 2–3. Accordingly, defendants should be granted summary judgment 0n this claim.

### G. Interference with Grievance Process

Johnson accuses Rother, John Doe # 1, and John Doe # 2 of interfering with grievances that he had filed. Am. Compl. at 10, 23. The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of

grievances. *See 370 Bill Johnson's Rest., Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161 (1983). However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim. *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001). If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim. *See Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991). "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Cancel,* 2001 WL 303713, at *3; *see also Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003); *Mahotep v. DeLuca,* 3 F. Su pp.2d 385, 390 (W.D.N.Y.1998).

Accordingly, it is recommended that defendants be granted summary judgment on this ground.

### H. Sexual Harassment

Johnson claims that he was fondled in the "groin area" by Coffey on three separate occasions. Am. Compl. at 22. The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. It is well settled that the "unnecessary and wanton infliction of pain on a prisoner constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Boddie,* 105 F.3d 857, 861 (2d Cir.1997) (citing *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). In order to prove a violation of the Eighth Amendment, a plaintiff must satisfy both an objective and a subjective inquiry. *See Trammell v. Keane,* 338 F.3d 155, 161 (2d Cir.2003). A prison official violates the standards of the Eighth Amendment when (1) the alleged punishment is "objectively, sufficiently serious" and (2) he or she acted with a "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Because sexual abuse by a prison official with a cul-

pable state of mind may constitute a violation of contemporary standards of decency and cause severe harm to the prisoner, such allegations may be cognizable under the Eighth Amendment. *Boddie,* 105 F.3d at 861 ("[S]evere or repetitive sexual abuse of an inmate ... can be 'objectively, sufficiently serious.' "); *see also Farmer,* 511 U.S. at 834–35 ("[The] rape of one prisoner ... serves no legitimate penological objective, any more than it squares with evolving standards of decency.") (internal quotation marks and citations omitted).

**\*14** On the other hand, sexual harassment violates the Eighth Amendment only if the harm is "objectively, sufficiently serious." *Boddie,* 105 F.3d at 861. The Second Circuit has held that a small number of isolated incidents of alleged sexual abuse, including verbal harassment, may not suffice to meet the objective prong of the test or involve a harm of a federal constitutional level. *Id.* Further, a plaintiff must demonstrate that an incident or series of incidents were sufficiently egregious to be "objectively, sufficiently serious" to the point where such actions resulted in the denial of "the minimal civilized measure of life's necessities" and posed a substantial risk of serious harm. *Id.; Trammel,* 338 F.3d at 161. The Supreme Court has also held that a plaintiff must prove that a defendant used force "maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995 (1992).

Coffey is a corrections officer, and his responsibility includes serving as a "transport officer for prisoners being taken to various places away from Hudson." Coffey Decl. (Dkt. No. 119–11) ¶¶ 1, 5. While securing a prisoner for transport, departmental policy requires securing the prisoner in a particular way, including placing a chain around the prisoner's waist. *Id.* ¶ 9. Occasionally, an "extra length chain is positioned so that it comes in contact with the prisoner's groin and waist area." *Id.* ¶ 10. Coffey states that his hands never came in contact with Johnson's groin area on the day in question. *Id.* ¶ 15. A DOCS

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

investigation concluded that Johnson's allegations against Coffey were without merit. *See* Defs.' Ex. E (Dkt. No. 119–7) at 11–21.

Even if Coffey's hands had come into contact with Johnson's groin area while securing Johnson for transport, Johnson's allegations are insufficient to articulate a claim of constitutional dimensions. In *Boddie,* the Second Circuit dismissed as inadequate a prisoner's claim that a female corrections officer made a possible pass at him, squeezed his hand, touches his penis called him a "sexy black devil," pressed her breasts against his chest, and pushed her vagina against his penis. *Boddie,* 105 F.3d at 859–61. The Second Circuit concluded that no single incident was "severe enough to be 'objectively, sufficiently serious,' [n]or were the incidents cumulatively egregious in the harm they inflicted" to "involve harm of federal constitutional proportions as defined by the Supreme Court." *Id.* at 861; *see also Morales v. Mackalm,* 278 F.3d 126, 132 (2d. Cir.2002) (allegations that staff member asked plaintiff to have sex with her and to masturbate in front of her and other staff members "do not even rise to the level of those made by the plaintiff in *Boddie,* [and] do not state a claim for sexual harassment in violation of the Eighth Amendment to the United States Constitution."); *Excell v. Fischer,* 08–CV–945, 2009 WL 3111711, at *6–7 (N.D.N.Y. Sep. 24, 2009) (Hurd, J., adopting Report–Recommendation on de novo review) (claim that officer grabbed and squeezed plaintiff's penis during strip search for contraband relates a "quick, isolated incident of inappropriate touching" but not an Eighth Amendment violation); *Davis v. Castleberry,* 364 F.Supp.2d 319, 321 (W.D.N.Y.2005) (allegation that corrections officer grabbed inmate's penis during pat frisk is insufficient to state constitutional claim); *Morrison v. Cortright,* 397 F.Supp.2d 424, 425 (W.D.N.Y.2005) (allegations that a corrections officer touched plaintiff's buttocks, and that another "rubbed up against plaintiff['s] buttocks with [the officer's] private part" during a strip search describe an isolated incident unaccompanied by physical injury, and

therefore are not sufficiently serious to establish a constitutional claim); *Montero v. Crusie,* 153 F.Supp.2d 368, 373, 375 (S.D.N.Y.2001) (allegation that corrections officer squeezed inmate's genitalia during pat-frisks on several occasions does not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly when inmate did not allege that he was physically injured by such conduct).

**\*15** Accordingly, Coffey should be granted summary judgment as on this claim.

### I. Excessive Force

On May 12, 2008, while securing Johnson for transport, Coffey allegedly placed the leg irons "extremely tight." [FN10] The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. *Hudson v. McMillian,* 503 U.S. 1, 9–10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999).

> FN10. Although Johnson characterized this incident as a form of harassment (Dep. Tr. at 23), it is more appropriately analyzed as an excessive force claim.

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." *Hudson,* 503 U.S. at 9 (internal citations omitted); *Blyden,* 186 F.3d at 262. However, "the malicious use of force to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

cause harm constitute[s][an] Eighth Amendment violation *per se"* regardless of the seriousness of the injuries. *Blyden,* 186 F.3d at 263 (citing, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9–10 (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' " *Sims,* 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id.* at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* (quoting *Hudson,* 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] ... the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir.2003) (internal quotation marks and citations omitted).

In this case, Johnson fails both prongs of the Eighth Amendment analysis. The alleged exertion of force resulted in no medically determinable injury to Johnson as a medical examination following the incident revealed "no bruises, no open areas, [and] no swelling" around Johnson's ankles. Defs.' Ex. B at 39–41. Moreover, an investigation concluded that Johnson was not shackled too tightly at all. Defs.' Ex. E (Dkt. No. 119–7) at 29. Johnson has proffered no evidence to raise an issue of material fact as to

whether excessive force was used in this instance.

**\*16** Accordingly, defendants should be granted summary judgment on this claim.

### J. Verbal Harassment

Johnson claims that he was verbally harassed. Am. Compl. at 29. Verbal harassment alone, however, is not actionable under § 1983. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("The claim that a prison guard called [plaintiff] names ... did not allege any appreciable injury and was properly dismissed."); *Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("[V]erbal harassment or profanity alone unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem do not constitute the violation of any federally protected right and therefore is not actionable under ... § 1983 ."). Accordingly, defendants' should be granted summary judgment as to this claim.

### K. Retaliation

Johnson alleges defendants' engaged in unconstitutional conduct in retaliation for Johnson's filing of grievances. Am. Compl. at 29–30. To state an actionable claim for retaliation, a plaintiff must first allege that his conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996); *see also Lipton v. County of Orange,* 315 F.Supp.2d 434, 447–48 (S.D.N.Y.2004) (applying First Amendment retaliation factors to a pretrial detainee complaint). "Adverse action" is action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *See Mt. Healthy Cit. Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 214–15 (N.D.N.Y.2008). Conclusory allegations alone are insufficient. *Id.* at 214 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

Cir.1983) (explaining that "claim[s] supported by specific and detailed factual allegations ... ought usually be pursued with full discovery.")).

The filing of grievances is a constitutionally protected activity. *See Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003). Johnson, however, has failed to allege facts sufficient to support a retaliation claim. Johnson has only stated in conclusory terms that defendants were retaliating against him for filing grievances. Johnson offers no evidence to support his allegations, either through documentation or witness testimony. Thus, he has failed to allege specific facts from which one could conclude that defendants' actions were motivated by Johnson's constitutionally protected activities.

### L. Conspiracy

Johnson alleges that defendants conspired together to deprive him of his constitutional rights. Am. Compl. at 30. "Section 1985 prohibits conspiracies to interfere with civil rights." *Davila v.. Secure Pharmacy Plus,* 329 F.Supp.2d 311, 316 (D.Conn.2004). To state a claim for relief under § 1985(3), a plaintiff must show:

**\*17** (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*United Bd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–29 (1983); *see also Iqbal v. Hasty,* 490 F.3d 143, 176 (2d Cir.2007). "In addition, the conspiracy must be motivated by some class-based animus." *Hasty,* 490 F.3d at 176 (citations omitted).

Here, Johnson does not assert any facts giving rise to a conspiracy. First, Johnson vaguely asserts conclusory statements relating to an alleged conspiracy among defendants. This is insufficient. *See generally Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir.1999) (granting summary judgment for a § 1985(3) claim where the "assertions were conclusory and vague, and did not establish the existence of an agreement among defendants to deprive [plaintiff] of his constitutional rights."). Second, there has been proffered no evidence relating to agreements, or even communications, between the defendants, the purpose of their alleged conspiracy, or an intent by defendants to deprive Johnson of his civil rights. Lastly, there is no evidence that any alleged conspiracy was motivated by racial- or class-based animus.

Accordingly, defendants' motion as to this claim should be granted.

### M. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. Defs.' Mem. of Law (Dkt. No. 119–13) at 12. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229–30 (N.D.N.Y.2002), aff'd, 80 F. App'x 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991) (citing *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. *Saucier v. Katz,* 533 U.S. 194,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)
**(Cite as: 2011 WL 3439179 (N.D.N.Y.))**

201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230. Here, as discussed *supra,* accepting all of Helmer's allegations as true, he has not shown that defendants violated his constitutional rights.

**\*18** Accordingly, it is recommended in the alternative that defendants' motion on this ground be granted.

### IV. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 119) be **GRANTED** in its entirety and that judgment be entered in favor of all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.D.N.Y.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).*

N.D.N.Y.,2011.
Johnson v. Enu
Not Reported in F.Supp.2d, 2011 WL 3439179 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.; R.
Varkiar, Senior Counsel, Riverview C.F.; and New
York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
Oct. 22, 2008.

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the
State of New York, David L. Cochran, Esq., of
Counsel, New York, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action, brought pur-
suant to 42 U.S.C. § 1983, was referred to the Hon.
George H. Lowe, United States Magistrate Judge, for
a Report-Recommendation pursuant to 28 U.S.C. §
636(b) and Local Rule 72.3(c).

The Report-Recommendation dated September
12, 2008 recommended that Defendants motion to
dismiss be granted in part and denied in part. Specif-
ically, Judge Lowe recommended that Plaintiff's
Fourteenth Amendment procedural due process claim
against Defendant Varkiar regarding his disciplinary
hearing be dismissed if, within thirty (30) days from
the filing of this Final Order, Plaintiff does not file an
Amended Complaint that successfully states a Four-

teenth Amendment procedural due process claim. It
was recommended that Plaintiff's remaining claims be
dismissed with prejudice.

Plaintiff filed objections to the Re-
port-Recommendation, essentially raising the same
arguments presented to the Magistrate Judge.

When objections to a magistrate judge's Re-
port-Recommendation are lodged, the Court makes a
*"de novo* determination of those portions of the report
or specified proposed findings or recommendations to
which objection is made." *See* 28 U.S.C. § 636(b)(1).
After such a review, the Court may "accept, reject, or
modify, in whole or in part, the findings or recom-
mendations made by the magistrate judge. The judge
may also receive further evidence or recommit the
matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having
considered the issues raised in the Plaintiff's objec-
tions, this Court has determined to accept and adopt
the recommendation of Magistrate Judge Lowe for the
reasons stated in the Report-Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss
be **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

**REPORT-RECOMMENDATION**

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, com-
menced pursuant to 42 U.S.C. § 1983, has been re-
ferred to me by the Honorable Thomas J. McAvoy,
Senior United States District Judge, for Report and
Recommendation with regard to any dispositive mo-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

tions filed, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, in his Complaint, Raymond Robles ("Plaintiff") alleges that three employees of the New York State Department of Correctional Services ("DOCS"), as well as DOCS itself, violated his rights under the Eighth and Fourteenth Amendments when they (1) required him to submit to a random urinalysis test when they knew he was taking a medication that would prevent him from providing a urine sample, and (2) charged, convicted, and punished him with eighty-seven days in a Special Housing Unit for refusing to provide a urine sample. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint.

Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.;[FN2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing;[FN3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes;[FN4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate;[FN5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff;[FN6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample;[FN7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937;[FN8]

8. At approximately 10:30 a.m., Plaintiff was still

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

unable to provide a urine sample; [FN9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [FN10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [FN11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [FN12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [FN13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [FN14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [FN15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [FN16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine

sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [FN17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [FN18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [FN19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [FN20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [FN21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [FN22]

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007;[FN23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there.[FN24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief.[FN25]

**B. Summary of Grounds in Support of Defendants' Motion**

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

**II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [FN26] or (2) a challenge to the legal cognizability of the claim.[FN27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2)

[emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[FN28] The main purpose of this rule is to "facilitate a proper decision on the merits."[FN29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[FN30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[FN31] However, it is well established that even this liberal notice pleading standard "has its limits." [FN32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[FN33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).[FN34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ).[FN35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[FN36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gib-*

*son,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[FN37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* "[FN39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality .[FN40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN43] Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [FN44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

has already been given a chance to amend his pleading.[FN45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[FN46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[FN47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[FN49]

## III. ANALYSIS

### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket";[FN50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws .... "[FN51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice.[FN52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities.[FN53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted.[FN55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal)[FN56] that simply cannot be overlooked.

**C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/or Medical Condition**

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety.[FN57] Here, Plaintiff himself alleges that the three individual Defendants

did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation.[FN58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence."[FN59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it.[FN60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

**D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report**

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ).[FN61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more,

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it.[FN62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

**E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction**

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population.[FN63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

**\*10** Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate.[FN64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws.[FN65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983.[FN66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation;[FN67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive.[FN68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be **GRANTED in part** and **DENIED in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be **DISMISSED** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be **DISMISSED** with prejudice, and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [FN69]

**BE ALSO ADVISED that the failure to file**

**timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

FN30. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

FN1. *See, infra,* note 41 of this Report-Recommendation (citing cases).

FN2. (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

FN3. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

FN4. (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

FN5. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

FN6. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

FN7. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

FN8. (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

FN9. (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

FN10. (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

FN11. (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

FN12. (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

FN13. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt.

No. 17, at 5 [Plf.'s Response Affid.].)

FN14. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

FN15. (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

FN16. (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

FN17. (*Id.*)

FN18. (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

FN19. (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

FN20. (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

FN21. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

FN22. (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

FN23. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

FN24. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

FN25. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

FN26. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement

that the pleader is entitled to relief.' ").

FN27. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

FN28. *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

FN29. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

FN31. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

FN32. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

FN33. *See, e.g., Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

FN34. The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
(Cite as: 2008 WL 4693153 (N.D.N.Y.))

minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

FN35. *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" ) [emphasis in original].

FN36. *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently pre-

sented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

FN37. For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

FN38. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN39. *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

FN40. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation

marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

FN41. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

FN42. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

FN43. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

FN44. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

FN45. *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting re-

port-recommendation of Lowe, M.J.).

FN46. *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

FN47. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

FN48. *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

FN49. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007)

(Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

FN50. *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

FN51. 42 U.S.C. § 1983 [emphasis added].

FN52. *See, supra,* note 44 of this Report-Recommendation.

FN53. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**

against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

FN54. *See, infra,* note 41 of this Report-Recommendation (citing cases).

FN55. The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

FN56. As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2),

but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

FN57. *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

FN58. In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

*See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

FN59. *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

FN60. *See, supra,* note 44 of this Report-Recommendation.

FN61. *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

FN62. *See, supra,* note 44 of this Report-Recommendation.

FN63. *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in rela-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
(Cite as: 2008 WL 4693153 (N.D.N.Y.))

tion to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

FN64. *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison

disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

FN65. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States."* ) (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

*States.*" ) [emphasis added].

FN66. *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

FN67. *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

FN68. *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

FN69. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4693153 (N.D.N.Y.)
**(Cite as: 2008 WL 4693153 (N.D.N.Y.))**


N.D.N.Y.,2008.
Robles v. Bleau
Not Reported in F.Supp.2d, 2008 WL 4693153
(N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.